## Case No. 3,250.

### In re CORNWALL.

[9 Blatchf. 114; 6 N. B. R. 305; 6 Am. Law Rev. 365.] [1]

Circuit Court, D. Connecticut. Sept. Term, 1871. [2]

INVOLUNTARY BANKRUPTCY — CREDITOR—CONVEYANCE FOR MAINTENANCE — LIMITATION — NEW PROMISE.

1. In a proceeding in involuntary bankruptcy, the alleged debtor may deny that the petitioner for an adjudication is a creditor, and may, if he maintains such denial by proof, have the petition dismissed.

[Cited in Re McKibben, Case No. 8,859.]

2. Where a person, whose property exceeds in value all that he owes, with a view to the payment of his debts, and to secure to himself a maintenance in the future, conveys that property to another, on an agreement that the grantee shall pay all that he owes, and support him during the residue of his life, such a conveyance is not, per se, fraudulent and void, as against creditors.

3. Where the statutes of limitation of the state in which the petitioning creditor in a proceeding in involuntary bankruptcy and his alleged debtor reside, have created a bar to the recovery of the alleged debt by action, such debt cannot form a basis for an adjudication of bankruptcy on the petition; and the holder of a claim, so barred, is not entitled to prosecute such a petition.

[Cited in Andrae v. Redfield, Case No. 367; Re Noesen, Id. 10,288; Nicholas v. Murray, Id. 10,223; Re Eldridge, Case No. 4,331. Distinguished in Re Hertzog, Id. 6, 433.]

4. Where a debt is barred by the statute of limitations, a promise by the debtor to pay it when he is able, is conditional, and does not create an obligation, as a revival of the debt, until ability to pay appears; but, where there is a present debt, a promise to pay it when able does not destroy or postpone the right of the creditor to sue, or prevent the running of the statute.

This was a petition by Nathaniel O. Cornwall for the review and reversal of an order of the district court [of the United States, for the district of Connecticut] dismissing his petition, as a creditor of David Cornwall, for an adjudication, declaring the latter a bankrupt. [Case No. 3,251.]

Simeon E. Baldwin and Edwin E. Marvin, for petitioner.

Charles E. Perkins and Alfred Hall, for respondent.

WOODRUFF, Circuit Judge. On the 16th of June, 1870, Nathaniel O. Cornwall, a resident of Portland, in this district, presented to the district court his petition, under the 39th and 40th sections of the national bankrupt law [of 1867 (14 Stat. 536, 537)], alleging that he is a creditor of David Cornwall, (his father), also a resident of said Portland, averring that the latter has committed an act of bankruptcy, and praying that he be declared a bankrupt, and that a warrant is-

sue to take possession of his estate, that the same may be distributed, &c. The act of bankruptcy, as stated in the petition, is, that the said David Cornwall, being possessed of certain estate or property, situated in Portland, real and personal, and being indebted to the petitioner and others, did, on the 31st day of March, 1870, with a view to insolvency, and with intent to delay, hinder or defraud, as the case may be, his creditors, convey the property mentioned in the petition to Maria and Elizabeth Cornwall, of the said Portland, (his daughters, and sisters of the petitioner,) the same being all the property, real and personal, which he possessed, or which could be held as security for the payment of his, the said David Cornwall's, just and lawful debts. The indebtedness, claimed by the petitioner to constitute him a creditor of David Cornwall, is stated to be upon a promissory note, for money loaned to the said David, dated Portland, August 29th, 1869, for five hundred dollars, payable to the petitioner, or to his order, on demand, with interest from its date; and, also, the sum of five hundred and twenty dollars and eighty-eight cents, loaned to the said David, July 14th, 1854, the receipt of which is acknowledged in writing, with a promise to deposit the same, for the petitioner's benefit, in the savings bank; together, amounting to $1,020 88, exclusive of interest.

The respondent, David Cornwall, appeared and answered the petition, and, by his answer, denies that he is indebted to the petitioner in any sum whatever. He admits that he did, on the 31st day of March, 1870, execute the alleged conveyance of all his property to his daughters, Maria A. and Elizabeth, but denies that the same was done with a view to insolvency, or with any intent to delay, hinder, or defraud his creditors, and states, that, at the time of such conveyance, he had no creditors except his two daughters, (to whom he was then largely indebted,) and except a few small bills in the neighborhood, not amounting to three hundred dollars; that his two daughters, in consideration of such conveyance, promised and agreed with him, that they would support him during life, and would pay all his debts then existing; that they are ready and willing to pay all valid claims existing against him; and that they informed the petitioner, before he commenced the proceedings, that they would pay all valid claims he had against his said father. The answer also states the history of the apparent indebtedness of the respondent to the petitioner in detail, averring, that the $520 88, received from the petitioner in 1854, was given to him by his said son in consideration of, and in part repayment of, advances which he had made for the education of the petitioner at college, in order to which he had been compelled to borrow money; that, afterwards, in his advanced years, he was embarrassed by debts,

---

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission. 6 Am. Law Rev. 365, contains only a partial report.]

[2] [Affirming Case No. 3,251.]

which he had been unable to pay, while his said son had accumulated large wealth, and such sum was given and received to relieve him from such embarrassment, and without any expectation that the respondent was to repay the same, or to be considered or treated as a debtor to his said son therefor; that more than six years have elapsed since the said sum was so given to him by his said son, and, if the same constituted a debt, it has been barred by the statute of limitations of the said state of Connecticut; that the note for $500, dated August 29th, 1869, was made without legal consideration; that the sum of $500 was a voluntary gift made by the petitioner for the especial relief and benefit of his aged and infirm mother, to be expended, and, in fact, was expended, in repairing a portion of their dwelling house, which had become old and decayed, and which the respondent had not means then to repair; that such repairs were proposed by the petitioner, the furnishing of the money for the purpose was tendered by him, and the repairs were consented to, and were made by the respondent, in assent to the petitioner's proposal, and on his agreement to give the money to pay therefor; that, when the petitioner requested a note therefor, he reiterated that the money was a gift, but stated, that, as the respondent was then embarrassed by indorsements for another, he desired to hold a note for the benefit of his sisters, so that, if the respondent should fail or die, he could present said note against the respondent's estate, and obtain something for his said sisters; and that the respondent, in confidence in his said son, gave him a note, as requested, and afterwards, on the 29th of March, 1869, upon the request of the petitioner, and his statement that said note was lost, he gave him another note for the same purpose, which is the note mentioned in the petition, and is without consideration and void.

Upon the petition and answer, and upon the proofs of the parties respectively, the matter was brought to a hearing in the district court, and the petition was dismissed. The opinion of the district judge shows that, without deciding other questions, he deemed it sufficient to find that the petitioner is not in fact a creditor, upon two principal grounds—First, that the note mentioned in the petition was without legal consideration, the moneys advanced, and alleged by the petitioner to be the consideration of the note, having been, in truth and in fact, a voluntary gift by the petitioner, out of his abundance, to and for the relief and comfort of his aged and infirm parents, and accepted as such; and, second, that, if the moneys furnished to the father in 1854, and applied by him to the repayment of moneys borrowed, ever created or constituted an indebtedness by the father to the son, the latter was, by the statute of limitations of the state of Connecticut, barred from having or main-

taining any action therefor, and he, therefore, had no standing thereupon to ask, as a creditor, that David Cornwall be decreed a bankrupt.

Upon this appeal or review of the order of the district court, it is insisted, that the order should be reversed, on various grounds, the chief whereof may be stated and considered in the following order, namely: 1st. That the petitioner having, by his petition and the proofs furnished in support thereof, shown himself to be apparently, or prima facie, a creditor, the respondent was not at liberty, by putting that fact in issue, to have a trial of the question, and an adjudication dismissing the petition, but the cause should have proceeded to a decree upon the matter charged as an act of bankruptcy, and, that being established, the petitioner, when he offered proof of his debt, with a view to share in the distribution of the estate, would, if his claim was contested and disallowed, be entitled to a trial by jury before its final rejection. 2d. That the proofs do not warrant the finding that the $500, advanced for the repairs of the respondent's dwelling house, were a gift, but, on the contrary, they show, that the money was sought as a loan, advanced as a loan, and secured as a loan by the promissory note of the respondent, upon the loss of which the note mentioned in the petition was given, as a new or substituted security. 3d. That the state statutes of limitation have no application to proceedings in bankruptcy; that, notwithstanding the lapse of time, the debt still exists; that, while it may be true, that, in one or even more states, no action will lie for its recovery, an action may be maintained therefor in another state, if the respondent is found therein; and that, unless it is shown that it cannot be recovered in any of the United States, it must be declared a debt, and the court of bankruptcy, as a national tribunal, must recognize as a creditor any one who has a cause of action valid in any state of the Union. 4th. That, if the statute of limitations in Connecticut be, in general, recognized by the federal court in bankruptcy, as disabling the holder of a claim from proceeding against his debtor, the petitioner's claim, in the present case, is not barred thereby, for two reasons—First, the promise made in 1854, as it appears by the proofs, in writing, was, that the respondent would, "as soon as it is in his power," deposit it in the savings bank, according to the petitioner's previous direction, so that the latter would be able to control it at pleasure, and that it has not been proved that six years have elapsed since it was in the power of the respondent to do this, and, therefore, it does not appear that six years have elapsed since the cause of action accrued; or, second, the respondent held the money of the petitioner upon a trust, to deposit it in the savings bank, to the account of the petitioner, and to such a trust the statute of limitations does not apply, and, therefore, the claim is not barred.

1. The claim, that, in proceedings for a compulsory decree, declaring a respondent a bankrupt, the latter may not deny that the petitioner is a creditor, or may not, by proofs, maintain such denial, and thereupon dismiss the petition, is, I think, wholly untenable. It is true, that, where a party has been adjudged a bankrupt, no one claiming to be a creditor can be excluded from a share in the distribution of the estate, without having the opportunity, furnished by the 24th section, to appeal, and, on that appeal, to have his claim tried, as in an action at law, in the usual manner in the courts of the United States. But this does not reach the question, whether a party has been, by the law, made liable to be declared a bankrupt, at the instance of one who has in fact no claim against him, and no interest in the question whether the party has committed an act of bankruptcy or not.

Section 39 of the bankrupt law declares what shall be deemed acts of bankruptcy, and makes him, who has committed such an act, liable to be "adjudged a bankrupt, on the petition of one or more of his creditors, the aggregate of whose debts provable under this act amount to at least two hundred and fifty dollars, provided such petition is brought within six months after the act of bankruptcy shall have been committed." To the maintenance of the petition, or to give the petitioner any standing in court, several things must concur. The petitioner must be a creditor, the debt due to him must be provable under the act, and the amount thereof must be at least two hundred and fifty dollars. Unless all these concur, he has no right to prosecute the petition; and, however he may be able to prove, or does prove, the commission of acts of bankruptcy, he is not, by the law, clothed with the right or power to begin or sustain a prosecution, or ask a decree. It is nowhere, expressly or impliedly, said, that one who can furnish proof which, unexplained and uncontradicted, would show, prima facie, that he is such creditor, may file such a petition, or that a party may be adjudged a bankrupt upon such a petition. The objection goes not merely to the disability of the petitioner, but to jurisdiction of the cause. And this should be so. It would be monstrous injustice, if parties were not only liable to be proceeded against, but must necessarily be adjudged bankrupt, submit to a warrant, and be dispossessed of all their property, at the instance of any one and every one who, either dishonestly or by mistake, was able to present, by petition and affidavits, prima facie evidence of a debt, when, in truth, none existed. It might often happen, that the only act of bankruptcy alleged depended, for its character, upon the very question whether any debt was owing to the petitioner; and, if a mere prima facie case, shown by the petitioner, precluded further inquiry on that question, a party might be declared a bankrupt, his property be subjected to administration un-

der the law, and, in the end, it would appear, that, the petitioner having no debt, no act of bankruptcy had been committed, and the whole proceeding, injurious as it must be, was wholly groundless. Not only so; no other creditor appearing, the proceeds of the estate must be returned to the party groundlessly prosecuted.

If, therefore, there were nothing further in the act bearing upon this point, I should not hesitate to say, that a respondent, called by the petition into the district court, had the clear and full right to meet the petitioner at the threshold of the proceeding, by denying and disproving any of the facts without which the petitioner has no authority in law to maintain the proceeding. But section 41 gives this right in express terms, and makes it the imperative duty of the court to proceed summarily to hear the allegations of the alleged debtor; and, as to the commission of the act of bankruptcy, it must order a trial by jury, if he demands it, and if, upon such hearing or trial, the debtor proves that the facts set forth in the petition are not true, "the proceedings shall be dismissed, and the respondent shall recover costs." What are "the facts set forth in the petition?" Obviously, all those which are, by the 39th section, necessary to make it the duty of the court to adjudge the respondent a bankrupt. That is to say, there must be before the court a creditor, by a provable debt, to the required amount, and, this being true, there must be established an act of bankruptcy, within six months before the filing of the petition. Let it be supposed, that the petition did not state all these facts, it cannot be doubted that it would be the duty of the court to dismiss it. So, if the respondent shows that any of these facts, when alleged in the petition, are not true, the statute requires that the proceedings be dismissed.

The inquiry in the district court, whether, in this case, the petitioner was a creditor, having a debt against the respondent provable under the act, was, therefore, a proper inquiry, and, if it was properly found in the negative, the order dismissing the proceeding was not erroneous.

2. Upon the merits of the case, there is, to my mind, a difficulty in sustaining the petitioner's application, in the point upon which no opinion was expressed in the district court. As already observed, to warrant the adjudication sought, it must appear that an act of bankruptcy has been committed. In the petition herein, the precise act upon which the petitioner relies is stated, to wit, that the respondent, being indebted to the petitioner and others, conveyed his property to Maria and Elizabeth Cornwall, with a view to insolvency, and with intent to delay, hinder or defraud, as the case may be, his creditors.

Now, the proof is, that the object of the conveyance was the payment of all the debts

of the respondent, and to make provision for his support by his daughters in his old age. This was not a purpose fraudulent as to any one. So far from being a conveyance with a view to insolvency, it contemplated actual solvency, and actual payment of all he owed; and his property, according to the proof, was fully adequate, and more than adequate, for the purpose, even conceding that the petitioner was a creditor to the full amount which, according to his own statement of the transactions, he could be allowed. Unless, then, the transaction was, per se, fraudulent and void, as against creditors, it could not, upon this proof, be pronounced an act of bankruptcy. This raises the question—When a person, whose property exceeds in value all that he owes, with a view to the payment of his debts, and to secure to himself a maintenance in the future, conveys that property to another, on an agreement that the grantee shall pay all that he (the grantor) owes, and support him during the residue of his days, is such conveyance, per se, fraudulent and void, as against creditors? Such arrangements, by aged and infirm parents, to relieve themselves of care and labor in their declining years, have not heretofore been unusual. They are commonly made with children, or with some one selected, and, in a sense, adopted, to stand in that relation. The facts, that the grantor is aged, infirm, and incapable of labor to make his estate productive, that the grantee is already a creditor, and, therefore, has a claim to receive a portion of such property, that the grantor owes but little besides, that the grantee is already, (irrespective of such conveyance,) of sufficient ability to pay all the debts, and that he proceeds to do so, and stands ready and willing to pay all that the grantor owes, may not give a transaction validity, which, on its face, must be held fraudulent; but, they do utterly repel the suggestion of fraudulent intent or purpose in the minds of the parties thereto, and all these facts concur in the present case. And, according to the proofs here, the only reason why the petitioner has not been paid is, that there is a question, and a very serious question, to say the least, whether there is any debt whatever due to him.

The grantees here have always been ready and willing, and have declared to the petitioner, that they are ready and willing to pay him whatever, if anything, his father owes him. If, in fact, anything is due, he could not, (had no such conveyance been made,) recover it, in the face of his father's denial thereof, until he had established the indebtedness by an appropriate proceeding therefor; and there is no existing difficulty in obtaining payment when he has so established a debt, the said grantees being ready and willing, thereupon, to pay it, and being compellable to pay it, by proofs and proceedings adapted to such a state of facts. Under

such circumstances, the allegation of the petitioner savors more of bitter, not to say malignant, hostility, provoked by the confidence reposed by his father in his sisters, or some unexplained family dissension, than of any sincerity or belief, even by the petitioner, that any fraud was intended.

The court below having expressed no opinion upon this point, it received little attention from the counsel, on the argument of the review in this court. I have, therefore, deemed it proper to examine the other grounds upon which the propriety of the order was discussed, instead of resting the decision upon a failure to prove an act of bankruptcy.

3. Upon the question, whether, upon the proofs, it was rightly held that the petitioner was not a creditor of the respondent, it is not insisted that, if the advance of five hundred dollars, for the repairs of the dwelling house, was in fact a free gift, made chiefly for the relief and comfort of the petitioner's aged mother, and in part, (as the evidence tended to show,) to provide a room which the petitioner might himself conveniently occupy on his visits to his parents, there was any error in holding, that such gift constituted no legal consideration for the note set forth in the petition, or the prior note for which, on the loss thereof, such note was given; and that, it being without legal consideration, the petitioner could not be held a creditor by reason thereof.

That the advance was a gift, voluntarily made, and accepted as such; that the repairs were consented to by the respondent, and the money received and expended upon that understanding, was distinctly found, as a fact, by the district judge, upon the trial of the cause, with the witnesses before him, and with an opportunity to hear, observe and consider, not only what the witnesses testified, but their appearance and their manner while testifying. Such finding, it is true, is not conclusive upon this hearing. It is open to review; but it ought not to be lightly regarded, nor should it be overruled, except upon a very decided conviction that it is erroneous. A careful study of the evidence, aided by the suggestions of the petitioner's counsel, has not produced that conviction. On the contrary, the preponderance of the testimony is, that it was a purely voluntary contribution by the son, under the then influence of filial affection towards his mother, to render her latter days more comfortable; that it was received as such, and mutually so understood; that there was, on the part of the respondent, neither intention nor willingness to run in debt for the purpose; and that it was in distinct response to the son's offer to bear the expense, that the father consented to make the repairs. True, the giving of the note for the amount is very strong persuasive evidence that the respondent regarded it as a loan. Unexplained, it might override the evidence of the

previous offer and acceptance. But the explanation makes the whole transaction consistent. Upon further reflection, and in view of the motive which had prompted his generosity, it occurred to the son, that, as his father was under some indorsement or indorsements for a third person, and might fail or die insolvent, it might happen that his purpose to benefit his mother by the gift might be defeated, and that he might better secure his whole purpose, if he could induce his father to execute a note, to be held, and, in such a contingency, be made a claim against his estate, for the benefit of his mother and sisters. Whatever might be said of such a design, if the contingency had happened, and the attempt had been made thus to withdraw a portion of that estate from creditors, it is clear that such an arrangement was entirely consistent with the original and actual intent of the petitioner to advance the money as a gift, and with its acceptance and appropriation to the repairs, upon that understanding. So that it not only remains true, that the consideration for the note was a gift, but the force of the evidence, which the giving of the note involves, is weakened, and, in fact, overcome, by the proof of the purpose for which it was solicited by the petitioner and given by his father. And this view of the subject is greatly strengthened by the fact, that when, on the representation that the first note was lost, another was given, there was no claim for interest, as upon a loan to the father. If it appeared, that, upon all other grounds, the note was a valid note, I should hesitate, at least, in allowing parol evidence of an agreement with the father, either prior or contemporaneous therewith, that he should not be held bound to pay it. But, on the question whether it ever had any legal consideration, whether the money advanced was a gift which neither party intended or expected would be repaid, or would create any indebtedness by the respondent, the facts, that it was not treated as a debt, that the father was never called upon to pay it, and that, when a note was given in apparent renewal thereof, it was not treated as if given for a loan, and no interest was charged, go very strongly in support of the direct testimony to the point in controversy.

4. Whether, where the statutes of limitation of the state in which the parties reside have created a bar to the recovery of an alleged debt by action, the holder may, nevertheless, pursue the alleged debtor, under the bankrupt law, and, by that means, compel its payment, is a question of wider and greater importance than the immediate effect of this particular litigation.

In the present case, both parties reside in the state of Connecticut. If the advance secondly mentioned in the petition was a loan or created an indebtedness, it was for money received by the respondent in this state, in the year 1854, he then and ever since residing here. For the purposes of this question, it is assumed that such advance did create a debt, and, therefore, that the cause of action arose more than fifteen years before the filing of the petition in the district court, and is within the statute of the state, which declares, that no action "shall be brought but within six years after the right of action shall accrue."

In the construction of this statute, and in declaring its effect, the courts of the state hold, that the statute does not merely prohibit the maintenance of an action technically so called, but it bars the claim in whatever form it may be asserted. They declare, that it applies to the nature of the indebtedness as well as to the form of the action; that, although in terms applicable to actions only, it applies to all claims which may be the subjects of actions, however presented; that the lapse of time prescribed as a bar is regarded as furnishing a presumption of payment; that this presumption, when it is not overcome by a new promise, withdrawing it from the operation of the statute, is conclusive; and that the presumption, from the lapse of time, is, that the defendant has lost the evidence which would have availed him in his defense, if seasonably called upon for payment. Hence, after the lapse of six years, the claim can no more be used as a set-off than it can be made the subject of an action in form. Nor can it be successively urged before commissioners appointed by a court of probate to receive and allow claims against the estate of a deceased, with a view to the distribution of such estate. This construction and declaration of the effect of the Connecticut statute, establishes fully that the claim of this petitioner is, in their view and by force of the statute, absolutely barred. The appropriation of the estate of a deceased to the payment of his debts by an auditing and allowance thereof, presents a close analogy to the appropriation of the estate of a bankrupt; and, in effect, the Connecticut courts declare, that no legal claim exists in favor of the petitioner, if the statutes of limitation of this state are to have their actual legal operation. See, on this subject, Robbins v. Harvey, 5 Conn. 335; Hart's Appeal, 32 Conn. 520, and the cases there cited.

The federal courts, sitting within the respective states, regard their statutes of limitation, and give them the interpretation and effect which they receive in the courts of the state. This has been repeatedly declared in the supreme court of the United States, and is now the familiar practice. Shelby v. Guy, 11 Wheat. [24 U. S.] 361; M'Cluny v. Silliman, 3 Pet. [28 U. S.] 270; Green v. Neal's Lessee, 6 Pet. [31 U. S.] 291; Ross v. Duval, 13 Pet. [38 U. S.] 45, and cases therein cited. In Ross v. Duval, Mr. Justice McLean says: "These acts are of daily cognizance in the courts of the United States,

and no one has ever doubted, that, in fixing the rights of parties, they must be regarded as well in the federal as in the state courts." More than this, instead of regarding the nature and design of statutes of limitation as a mere withholding of the remedy, while a subsisting cause of action is nevertheless supposed to continue, the supreme court, in recent cases, regard them as proceeding on the presumption which, as above stated, the courts of Connecticut declare to lie at their foundation. Thus, in U. S. v. Wiley, 11 Wall. [78 U. S.] 508, 513, Strong, J., says: "Statutes of limitations are indeed statutes of repose. They are enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue." In Levy v. Stewart, 11 Wall. [78 U. S.] 244, 249, Clifford, J., says: "Statutes of limitations exist in all the states. * * * They are regarded as statutes of repose, arising from the lapse of time and the antiquity of transactions, and they also proceed upon the presumption that claims are extinguished whenever they are not litigated in the proper forum within the prescribed period." See, also, the recognition of state statutes of limitation, and their binding force in the federal courts, in Stewart v. Kahn, 11 Wall. [78 U. S.] 493, and in Hanger v. Abbott, 6 Wall. [73 U. S.] 532.

It may be suggested, that an act of congress (Act Sept. 24, 1789, § 34; 1 Stat. 92) requires the federal courts, sitting in the respective states, to make the laws of such states the rules of decision in trials at common law, and that the recognition of state statutes of limitation is founded on that act. Doubtless, the act so requires; but it does not follow, that, looking to the grounds upon which statutes of limitation proceed, as above stated, in repeated cases, the federal courts would not have recognized those statutes as a defence, had there been no such act of congress. The reason of the statutes, and the obvious justice of giving them due application, as well as consistency of adjudication, and the right of each state to prescribe the conditions and limitations of the liabilities of its citizens, all forbid that a plaintiff should be legally entitled to recover in the federal court against one whose defence is perfect in the state tribunals. The terms of the act of congress do not reach the federal courts when sitting as courts of equity; and yet it is certain, that, as courts of equity, they do recognize and allow lapse of time as a defence, in precise analogy to the statutes of limitation, in cases where such analogy is appropriate. Besides this, if the act of congress be the ground of these decisions in the federal courts, it may be regarded, for the purposes of this question, as an adoption, by congress, of the statutes of limitation of the respective states within which the federal courts are held; and, thereupon, the same rules of interpretation and of application obtain as are above stated to govern the state courts, and the foundation and scope of the statutes. will be as also above stated. This leads to the same result. They will be held to apply to claims according to their nature, and in whatever form asserted. They will be deemed statutes of repose, proceeding upon presumption of payment, and of loss of evidence, and will bar all claims which may be the subjects of actions at law, however presented; and hence, also, their recognition by the federal courts, when sitting as courts. of equity, as furnishing the proper analogy.

With these declarations before us, of the nature, foundation and effect of statutes of limitation, by the courts of the state and of the United States, and in the face of the well-settled recognition thereof by the latter, in their several circuits and districts, at law and in equity, we are called upon to say, that, when sitting as a court of bankruptcy, in the state of Connecticut, the district court of the United States may and must disregard the statutes of limitation of the state, entertain a party alleging a claim long since barred, as a prosecutor, upon his demand take possession of the estate of the respondent, and actually appropriate such estate to the payment of such claim; and this is claimed notwithstanding the second section of the bankrupt law requires this court, on review of the proceedings, to determine all cases arising under that law as in a court of equity. If there be any warrant for thus calling upon the district court to depart from the settled rule governing the federal courts on this subject, it must be sought in the express provisions of the bankrupt law, in its necessary construction, or in an evident intent of congress to produce this result, manifested in the act itself or in the circumstances of its enactment.

It is not claimed that there is any express declaration in the act, forbidding the court sitting in bankruptcy from giving the same effect to the statutes of limitation of the state in which the court is held, which it would be bound to give in a litigation between the same parties in any other form, either at law or in equity. Nor, in my judgment, does its language, in any respect, or its necessary construction, as a system of bankruptcy, work such a result. When it employs the terms, debtor and creditor, debt, claim, demand, and other like or kindred terms, as a guide to the court in the discharge of its duty, within the jurisdiction where it is acting, it uses those terms in their usual accepted sense, and they are to be applied by the court, within that jurisdiction, and tested there. When the inquiry arises, in the circuit or district court of the United States for the district of Connecticut, whether, between two citizens of that state, the relation of debtor and creditor exists—

whether A. B. has a debt against C. D.—it is to be answered by the enquiry—Is C. D. under a legal obligation to pay money to A. B.?—Has A. B. a claim which the law will recognize as entitling him to recover money from C. D.? The law of the jurisdiction answers the question.

It is suggested, that, in the federal court, the question must be answered by enquiring, whether, in any state of the United States, such claim would be recognized as a debt entitling A. B. to a recovery from C. D., if he were brought within its jurisdiction, and, if yea, then it must be so recognized by the federal court for the district of Connecticut, within the jurisdiction of which he is, and in which the question of his liability is to be determined, and, therefore, if it appear that, should C. D. be found in Wisconsin, the courts of that state would treat him as a debtor, he must be so treated here; or, in effect, the rights and responsibilities of a resident of Connecticut are to be determined by the laws of Wisconsin, and not by the laws of this state, though the matter arises here. The principle of this argument is nothing short of this—If he would be held a debtor anywhere, he must be held a debtor in the district court for the district of Connecticut. There is no ground for restricting the meaning of the word "debt" or "debtor" to a liability which would be enforced within the states of this Union. If, for the mere reason that, by the laws of Wisconsin, a resident citizen of Connecticut could be adjudged to pay what is claimed to be a debt, provided he were found there, he must, also, in the district court for Connecticut, be adjudged a debtor, it must be because, if anywhere such claim would be so enforced, it must be here; and, in short, whatever, in any place on this globe, could be recovered as a debt, if the parties should be subjected to its jurisdiction, is a debt within the meaning of the bankrupt law, and must be so treated by the federal courts, wherever they are exercising their jurisdiction as courts of bankruptcy.

There is no law of the United States defining a debt or describing a creditor, except as one to whom a debt is due. The bankrupt law speaks of debts due and payable either presently or at a future day. An alleged debt is not to be deemed due and payable, if the claimant cannot by law compel its payment. It is conceded, by the argument, that this is true, if, by the law of no state of the United States such payment could be compelled, if the parties were there. No reason can be assigned for this limitation, as already suggested; and, if there is any foundation for the argument, the proposition should be—If payment could be compelled anywhere on the habitable globe, were the parties there, then it must be treated as a debt in this court and in this district. In my judgment, the district court for Connecticut had not, nor have I, sitting in this district, anything to do with the question, what are the laws of Wisconsin, or, what are the laws of China, when considering the relation between two resident citizens of Connecticut, growing out of transactions in this state. The parties to this controversy are not and have not been in Wisconsin. The transaction did not arise in Wisconsin. Neither the parties, nor the subject matter, have ever been, and are not, under the jurisdiction of that state, or affected by its laws; and, whether, in the supposed contingency of the respondent's going to that state, and being pursued there by the petitioner, the latter could establish, and recover a sum of money from him as, a debt, seems to me wholly irrelevant to the inquiry before the district court, and just as irrelevant as the same question would be if applied to China. The respondent is not there; he is in Connecticut; he is pursued in Connecticut; and here he is to be judged, not by the laws of Wisconsin nor the laws of China. It may be, that, in some state of the United States, no statutes of limitation exist, or, at least, for the purpose of testing this question, we may assume that to be possible. If so, then, upon the argument, the legislation of Connecticut, in all respects just, wise, and entitled to favor, exercised for the protection of the citizens of that state, and within its competent power, is to be defeated and rendered wholly inoperative, because some other state has no such enactment. It is using very moderate terms, to say, that such a view of the subject is unreasonable, and one of which the inhabitants of the several states, within their respective limits, might justly complain.

When the inquiry is permitted—What was the intent of congress, inferrible from the terms of the act, or from any other considerations, or what should be deemed the true construction of the act, when it is open to construction?—it is, as it seems to me, conclusive to observe, that the grounds taken by the counsel for the petitioner inevitably result in this, that congress, by the bankrupt law, has abrogated wholly all the statutes of limitation of the several states; not, it is true, in very terms, but, in every case, has destroyed their effect, as a protection against stale demands. The enactment of such laws, as statutes of repose, as a protection against unfounded claims and debts presumptively paid, and to stand as a defence, when, presumptively, the evidence is lost which would have availed the defendant if the claim were seasonably prosecuted, is within the unquestionable sphere of state legislation. In regard to its own inhabitants, and to transactions within its own limits, the state may properly insist upon its power in this respect, and the uncontrolled right to exercise it for the benefit of its citizens. If so, the congress of the United States is not to be deemed to have legislated in contravention of that power, or so as to destroy its efficiency, unless;

the terms or necessary construction of the act very clearly import such an intent. Indeed, the question may pertinently be asked,—Has congress the power to pass an act which shall work such a result? It has power to enact uniform laws on the subject of bankruptcy throughout the United States. If power to pass such laws necessarily involved the power to abrogate all laws of a state designed for the protection of its inhabitants within its own limits, for the purposes and upon the grounds on which statutes of limitation proceed, if bankrupt laws, as understood and construed when the constitution was adopted, had the effect, (notwithstanding statutes of limitation,) to let in stale demands, and to permit the claimants to prosecute in bankruptcy, it might be claimed at least, that the power was not wanting. But it was conceded, on the argument herein, that the bankrupt laws of England have no such effect, and that the court of bankruptcy, like courts of equity, recognizes the statute of limitations as a bar. See 1 Archb. Bankr. (Ed. 1867), p. 533; 2 Doria & M. Law & Pr. Bankr. 787; Ex parte Dewdney, 15 Ves. 479, 2 Rose, 59; Ex parte Roffey, 19 Ves. 468; Ex parte Ross, 2 Glyn & J. 46; Gregory v. Hurrill, 1 Bing. 324, 8 Moore, 190; In re Clendinning, 9 Ir. Ch. 284; Ex parte Woodward, 3 Deac. 294; Ex parte Topping, 34 Law J. (N. S.) pt. 1, "Bankruptcy," 44; Ex parte Kidd, 7 Jur. (N. S.) pt. 1, p. 613.

The practical consequences of the claim here asserted by the petitioner, also require us to say, that congress, in the enactment of the bankrupt law, had no intention to override state statutes of limitation. Examples are numerous, of citizens who have for many years reposed in safety under the protection of those laws, and have been able, from the earnings of careful industry to save some provision for old age, sickness, or the education of their children, and now, by the warrant of the bankrupt law, stale claims are produced; they are made the basis of prosecution in bankruptcy; acts otherwise wholly just and proper are called fraudulent, and deemed acts of bankruptcy, by reason of such stale claims now elevated to the character of debts; parties who could not in any form maintain a claim, in any court whatever, having jurisdiction of the parties, become prosecutors; all the legal presumptions of payment, or other defence, or loss of evidence, on which statutes of limitations proceed, are disregarded; and all that the, now indeed, unfortunate respondents have is swept away. Truly, if this be so, congress has provided a new way to collect old debts. This was not the design or purpose of the law, and I cannot yield my assent to the argument which gives it such an operation. It is true, that the consequences adverted to are not of such force as to control an express constitutional provision of an act of congress, but they are of

great importance, when an incidental effect is sought to be given to the act, which is not necessarily involved in its express words.

We are not left to the considerations above suggested, as our sole guide to the determination of this question. The act itself, so far from declaring that the statutes of limitation shall not affect the prosecutor of the petition, contains a provision which seems very clearly to indicate that such statutes are to be regarded in the court of bankruptcy, as fully as they have heretofore been recognized in the federal courts. It was conceded, by the counsel for the petitioner, that, had the respondent been adjudged a bankrupt, the claim of the petitioner would, nevertheless, be open to contention, and his debt must be established. This concession was clearly correct. The mere fact that he is a petitioner is not conclusive upon other creditors that he is to be allowed, in the distribution of the estate, just what he claims in his petition; nor is it conclusive upon the assignee. If this were not so, collusion between a debtor and a petitioner setting up a pretended but fictitious claim would work the grossest injustice.

In the first instance, the validity of claims, and their title to allowance in the distribution of the estate, are passed upon in the district court (sections 22, 23). If rejected, an appeal lies to the circuit court; and here the claimant must file a statement, setting forth his claim, substantially as in a declaration for the same cause of action at law, and the assignee must plead or answer thereto, in like manner, and like proceedings must thereupon be had, in the pleadings, trial, and determination of the cause, as in an action at law, commenced and prosecuted in the usual manner, in the courts of the United States. Section 24. This section clearly imports, that the assignee may interpose any legal defence whatever, which could be interposed in an ordinary action in the United States courts, and the issue must, on the trial, be determined, and judgment must be pronounced, as in such an action. It has already been seen, that, in actions at law in those courts, the state statutes of limitation are fully recognized as a defence; and they must, by the clear language of this section, be, in like manner, available on such an appeal, and the claim of this petitioner, in such case, must be rejected. The bankrupt act, therefore, not only does not abrogate the state statute of limitations, but here plainly warrants its interposition as a defence, and requires the court to sustain it. That act has, doubtless, furnished some new defences, but it has deprived the party of none which were available in an ordinary action at law for the same cause. This is, also, apparent from the provisions of the 21st section, which, although it provides for a temporary stay of pending suits, permits them to proceed to judgment. Clear-

ly, therefore, the defence of the statute of limitations, wherever it has been interposed, must avail in all such suits.

These provisions seem to me to show, conclusively, that nothing is further from the intention and effect of the bankrupt law, than to deprive a party and his estate of the protection of such laws; nor could language be better adapted to secure their benefit, as a defence against stale claims. And this should be so. No equity pertains to a prosecutor in a court of bankruptcy, to be allowed to enforce a claim, which, in a court of law, and in a court of equity which proceeds in analogy to the statute of limitations, would be rejected. He is in no worse condition than in either of those courts. All that can be suggested is, that, if courts of bankruptcy recognize state statutes of limitation, and yet the discharge of a bankrupt operates against claims barred thereby, the claimants lose their chance of finding their alleged debtor in some other state, and compelling payment. So far as this applies to the present petitioner, or any other prosecuting in this district, the answer is easy. If he prosecute the respondent in any other form, the effect is precisely the same. The judgment in an action at law here would forever bar any prosecution of an action in any other state.

The precise question in this case is, whether one who alleges that he is a creditor by a debt which is, under the state law, barred, can become a prosecutor in the court of bankruptcy, and demand that, on his petition and proofs, the respondent be adjudged a bankrupt. A conflict of opinion is found in the decisions of some of the district courts, on the question, whether, after a debtor has been adjudged a bankrupt, a debt, barred by the state statute, should be allowed to share in the distribution of the estate. In re Ray [Case No. 11,589]; In re Sheppard [Id. 12,753]; In re Kingsley [Id. 7,819]; In re Hardin [Id. 6,048]. Many of the views above suggested are ably presented in the discussion of that question. Incidentally to that discussion, the question has arisen, whether, if such claims are not allowed, the discharge of the bankrupt would avail as a defence thereto, if he should afterwards be sued in another state. If it can be successfully insisted, that a claimant can be permitted to prove his claim and share in the distribution of the estate, who could not have prosecuted the respondent, and required the court to adjudge him a bankrupt, then the decision herein determines nothing on the question thus in conflict. It is, however, obvious, that the views here expressed are quite pertinent to that question. It is, therefore, not irrelevant to add, that the apprehended consequence, of leaving the discharged bankrupt exposed to prosecution and judgment for all claims barred by the laws of the state in which the discharge is granted, if he be found in another state, because they are held in the bankrupt court not to constitute the claimant a creditor, nor to entitle him to share in the distribution of the estate, is not necessarily the result of such a holding. True, it is declared (section 34), that a discharge shall "release the bankrupt from all debts, claims," &c., "which were or might have been proved against his estate in bankruptcy;" and, in another form (section 32), the order of the court must direct a discharge "from all debts and claims which by said act are made provable against his estate." Whether a claim is provable or not, is to be determined by its nature, and not by enquiring whether it is possible to establish it. Provision is made, in the act itself, for the exclusion of many debts and claims which are in their nature provable, but it is not questionable that they are, nevertheless, released by the discharge. Under section 23, one who has accepted a preference contrary to the provisions of the act, shall not prove his debt or claim, nor receive a dividend, unless he have surrendered to the assignee the property received by him. The right of a mortgagee or pledgee to prove his debt is qualified by section 20. By section 35, one who obtains money or property as an inducement for forbearing to oppose, or for consenting to, the debtor's discharge, is excluded from any share in the estate. A creditor, having reasonable cause to believe his debtor insolvent, &c., who receives a conveyance or payment, as mentioned in the 39th section, is not allowed to prove his debt in bankruptcy. It is not at all doubtful, that the discharge, if granted, is equally effectual, as against such creditors, to release the bankrupt, as it is against any other creditor. This is sufficient to show, that a holding that an alleged debt is, in the court of bankruptcy, as well as in a court of law or court of equity, barred by the statute of limitations, does not necessarily include a holding that the bankrupt cannot successfully plead his discharge as a defence thereto, should an action be afterwards brought against him in this or any other state. The rejection of the claim by the court of bankruptcy proceeds upon the same grounds as its rejection in a court of law when there tried, whether in an ordinary action, or on the appeal from its disallowance (section 24), namely, that it has no legal existence, that it is not a debt due and payable; and, therefore, if an action were afterwards brought therefor, it would stand just as a claim would stand, which, on such an appeal and trial, was found usurious, or to have arisen out of an illegal transaction, or to have been released or paid, or to be held by one who was forbidden to prove his debt by section 39. In either case, the claim thus rejected is found not provable against the estate; and yet, in such subsequent action therefor, the discharge would be a conclusive defence.

For these reasons, I am clearly of opinion, that a petitioner alleging a claim which is

barred by the statutes of limitation, cannot maintain a petition, in involuntary bankruptcy, for an adjudication declaring his alleged debtor a bankrupt.

5. The suggestion, that the advance of money made by the petitioner in 1854 is not within the statute of limitations, because it was held as a trust, or because, the promise to repay it being conditional, six years have not elapsed since the cause of action accrued, is not sustained by a just view of the actual transaction. Taking the account of the advance as given by the petitioner himself, (and, therefore, assuming that it was not made and received as a partial return of the money advanced by the father for the education of the son,) there has never been a moment when the son could not have maintained an action of assumpsit, at law, therefor. If treated as a loan, or as payable at all, it was payable whenever the lender saw fit to require it. Depositing it in the savings' bank, to the credit of the son, was a mode suggested, which would have been satisfactory, but the son could have required payment to himself personally at any moment, and the savings' bank was merely constituted the agent to receive it. The statement of the father, in his letter, that he would deposit it as soon as in his power, called out no dissent, but there was no contract binding on the son, which required him to forbear. It was, therefore, payable on demand, and the statute began to run from the time the advance was made. The debt, if any, existed from that time. Where a debt is already barred by the statute of limitations, a promise by the debtor to pay it when he is able, has been regarded as conditional, and not to create an obligation, as a revival of the debt, until ability to pay appears; but, where there is a present debt, a promise to pay it when able does not destroy the right of the creditor to sue, nor postpone such right, and it in no wise hinders or prevents the running of the statute. I am inclined to say, also, that, if the transaction were treated as a contract to pay when the respondent was able, and was binding, as such, upon both parties, the proofs show no change in the pecuniary condition of the father since that time. He was able, in fact, to repay it when he received it, and ever since. True, he was embarrassed by the debts he incurred in providing for his son's education, and he wished to pay them, and did not wish to sell his farm for the purpose; but he was not insolvent. He wished to retain his property, as a means of support to himself and family; but it is idle to say, that, had his son brought an action of assumpsit, at law, for money lent, the father could have successfully defended on the ground of any inability to pay, shown by the proofs in this cause, or upon any idea of trust, cognizable only in a court of equity.

The order dismissing the petition herein was in no respect erroneous, and it must be affirmed, with costs.