HEUGH (HIGGS v.). See Case No. 6,472.

## Case No. 6,440.

### In re HEUSTED.

[5 Law Rep. 510.]

District Court, D. Connecticut. Feb., 1843.

BANKRUPTCY—DECREE—CONTEST—FRAUDULENT PREFERENCE—EXAMINATION.

1. In the case of a petition in bankruptcy, in invitum, the alleged bankrupt did not appear and contest the right of the petitioner to a decree; but certain of his creditors to whom he had made conveyances (alleged in the said petition to be fraudulent) appeared to contest the decree in their own behalf, denying that the petitioner had any debt, and praying that the alleged bankrupt might be subjected to an examination on that point. Held, that the creditors alleged to have been fraudulently preferred, had a right to appear and contest the facts asserted in the original petition. See Dutton v. Freeman [Case No. 4,210].

[Cited in Re Thomas, Case No. 13,891.]

2. The alleged bankrupt might properly be subjected to an examination in relation to his indebtedness to the petitioning creditor.

This was a petition by Griffin Green, praying that Eborn Heusted might be declared a bankrupt, alleging certain conveyances to have been made by him in fraud of the bankrupt act [of 1841 (5 Stat. 440)]. Heusted did not appear to controvert the allegations in the petition, but some of the creditors, who were alleged in the petition to have been preferred, appeared and contested the right of the petitioner to a decree. In their answer they denied the existence of any debt in the petitioner, on the ground of usury; and they prayed that the bankrupt might be examined as to this fact.

R. J. Ingersoll, for petitioning creditors.
Bissell & Hawley, contra.

[1] [Reported by Samuel Blatchford, Esq.]

JUDSON, District Judge, said it was very apparent from the seventh section of the act, that the right of appearance is not limited to those creditors who may have proved their debts; neither is the right confined to creditors whose names appear on the list annexed to the petition, but this right is expressly extended to "all persons interested." In the present case, the persons claiming to come in and contest the facts set up in the petition, are those who hold certain lands attempted to be secured to them by the alleged bankrupt, and these identical conveyances are set up in the petition as acts of bankruptcy, and utterly void, and a fraud upon the bankrupt act. These are the allegations of the petitioner, and the grantees under such deeds come here to deny these allegations, and maintain a valid title. The facts so stated in the petition, to wit, that these deeds were given with the intent to prefer the grantees over the general creditors, and in contemplation of bankruptcy are put in issue, and the legality or illegality of the deeds, depends upon the truth or falsehood of these allegations. If the deeds be fraudulent, in the sense which the act considers deeds of preference, then the title of those claiming under those deeds may be annulled by the decree, and the property may be claimed by the assignee of the bankrupt. In that event, the grantees lose the property attempted to be conveyed. This cannot be done unless a decree in bankruptcy is passed. These grantees have a direct interest involved in the proceeding, and may appear to show cause against a decree. Any cause which prevents a decree, goes to secure their title; any cause which makes for the decree, has a tendency to jeopardize their title. The right of appearance, then, is secured by the act to all persons interested. The persons appearing are such.

The second question is equally clear. Can the alleged bankrupt be subjected to an examination in relation to the consideration of the debt alleged to be due from him to the petitioning creditors? Recurrence must again be had to the act, in answering this question. A part of the second proviso to the fourth section, is found to be directly in point: "And such bankrupt shall at all times be subject to examination, orally, or upon written interrogatories, in and before such court, or any commissioners appointed by the court therefor, on oath, in all matters relating to such bankruptcy, and his acts and doings and his property and rights of property, which, in the judgment of such court are necessary and proper for the purposes of justice." The persons having a right to appear and contest the question of bankruptcy, now move for liberty to interrogate the bankrupt, in matters relating to the bankruptcy, and relating to his acts and doings; and relating to his property and rights of property. Those who make the motion, do not withhold the object they have in view, nor the subject matter of the inquiry. They claim the right of compelling the bankrupt to say whether more than the lawful rate of interest has been reserved and taken by the petitioner. This they seek to do, for the avowed purpose of invalidating the petitioner's debt, set up as the ground of his application. If objectionable, that objection rests on the proposition, that a party to a contract cannot impeach it by his own testimony. Whatever may be the common law on this subject, is not material, because the act of congress is framed, and wisely framed, broad enough to sanction the right of this examination. Heusted cannot be declared a bankrupt, on this petition, unless the petitioner has a valid debt of not less than $500; any fact within the knowledge of the bankrupt tending to invalidate this debt, relates to the bankruptcy in question. Suppose the debt of a petitioner is wholly without consideration—fictitious—may not a person in interest examine him on that point? Suppose the debt has been paid and extinguished, may the bankrupt not be interrogated? If a bankrupt have given a note without consideration, merely to enable a petitioner to proceed against him, or if he have paid a debt, still allowing the note to remain for the same purpose—these are "acts and doings," such as he may be compelled to answer on oath. The interrogatories may be filed, and the case will then be referred to a commissioner to take the answers.