OUACHITA COUNTY (UNITED STATES v.). See Case No. 15,919a.

---

## Case No. 10,622.

### In re OUIMETTE.

[1 Sawy. 47;[1] 3 N. B. R. 566 (Quarto, 140).]

District Court, D. Oregon. Feb. 21, 1870.

DEFENSES SEPARATELY PLEADED — SURPLUSAGE—DEMURRER — MOTION TO STRIKE OUT — TENDER NO DEFENSE TO PETITION IN BANKRUPTCY—PROMISSORY NOTE—WHEN NOT PAYMENT—PETITION—WHO MAY MAINTAIN.

1. Distinct defenses to a petition in bankruptcy should be separately pleaded.

2. A denial of the allegation in the petition respecting the insolvency of the respondent is a sufficient answer thereto, and a further statement as to the value of respondent's assets compared with the amount of his indebtedness, is surplusage and immaterial.

3. A demurrer is not the proper mode of objecting to irrelevant or immaterial allegations, or the mingling in one plea of distinct defenses, but a motion to strike out.

4. In a petition in bankruptcy, the debt and the act of bankruptcy constitute the cause of action, and the defense thereto may go to either or both of these matters, but if there are several defenses they must be separately pleaded.
[Cited in Risser v. Hoyt, 53 Mich. 198, 18 N. W. 617.]

5. A plea of tender can under no circumstances be a defense to a petition to have a debtor adjudged a bankrupt.

6. The mere delivery and receipt of the promissory note of the debtor or a third person does not constitute payment, but it must also appear that the creditor expressly agreed to take such note as payment.
[Cited in Re Morrill, Case No. 9,821; Re Parker, 11 Fed. 399; Gest v. Packwood, 34 Fed. 375.]

7. Where a creditor took the promissory notes of third persons from his debtor upon an agreement that they should be considered as taken in payment, if collectable, such creditor is bound to use ordinary means and diligence to collect such notes, and, if necessary, he must sue upon them.

8. A creditor whose debt is provable in bankruptcy, though not due, may maintain a petition to have his debtor declared a bankrupt.

In bankruptcy.

J. W. Whalley and Walter M. Thayer, for petitioners.

John H. Mitchell and Joseph N. Dolph, for respondent.

---

[1] [Reported by L. S. B. Sawyer, Esq, and here reprinted by permission.]

DEADY, District Judge. This petition is brought by S. A. Frankenau et al. and H. Rosenfeld et al. The petition states that on November 30, 1869, said L. H. Ouimette being indebted to the petitioners respectively in the sums of $157.45 and $144.54, on account of goods, etc., theretofore sold and delivered to said Ouimette, made and delivered to said petitioners his two promissory notes for sums respectively, payable to their several orders, sixty days after the date thereof, with interest at one per centum per month, and that said petitioners are still owners and holders of said accounts and notes, and that the sums aforesaid are respectively payable thereon. That on or about December 15, 1869, said Ouimette committed an act of bankruptcy: In that, said Ouimette being then insolvent, did sell and deliver all his stock of goods, then used by him in his business of merchant, at St. Louis, in the district aforesaid, the same being then and there of the value of $1,500, to Pierre & Mull of the place last aforesaid, in consideration of the relinquishment of a debt of $1,200 then due said Mull from said Ouimette, with interest, thereby to give a preference to said Mull; and with intent to hinder, delay and defraud his other creditors; and with intent to defeat and delay the operation of the bankrupt act. Wherefore the petitioners pray that Ouimette may be adjudged a bankrupt, etc.

On February 3, 1870, Ouimette appeared and answered the petition. The answer is long and rambling. Besides the specific denials of certain allegations in the complaint, it contains two or more supposed defenses to the petition, but neither these denials nor supposed defenses are separately pleaded, but on the contrary, form one continuous and mingled statement.

At common law the defendant was confined to a single plea consisting of a single matter of defense. Gould, Pl. 426. But this rule, sometimes operating unjustly, led to the enactment of the statute of 4 Anne, c. 16, § 4, which provided that the defendant, with leave of the court, might "plead as many several matters as he shall think necessary for his defense."

In the construction of this statute, it was held that it did not authorize the defendant to allege more than one defense in one plea. In other words, that each plea must still be single as at common law (Gould, Pl. 429, 430); and that it did not extend to dilatory pleas (Id. 431).

On this subject, the rule prescribed by the Code, in effect, coincides with the rule of the common law as modified by the statute of Anne. It provides that the answer shall contain a specific denial of each material allegation of the complaint controverted by the defendant, and a statement of any new matter constituting a defense or counter-claim; also, that the defendant may set forth by answer as many defenses and counter-claims as he may have; but they shall be separately stat-

ed and refer to the causes of action which they are intended to answer in such manner that they may be distinguished. Code Or. 156, 157.

After denying certain allegations in the petition respecting the indebtedness and the solvency of Ouimette and the commission of the act of bankruptcy, the answer "further alleges" that Ouimette "has property which he holds and owns in his own right over and above all debts and liabilities of the value of $2,000." Then follows an allegation by way of "further answering said petition," to the effect that on January 5, 1870, at the request of the petitioners, Ouimette delivered to petitioners the notes of third persons then held and owned by said Ouimette for the aggregate sum of $285.26 principal, with interest from various dates within the year 1869, with "the agreement that said petitioners should make inquiries as to whether said notes were collectable, and if so, they are to be received by said petitioners in payment of said notes of him, said Ouimette, to said petitioners;" and that said notes, with the exception of one for the sum of $52.26, with interest from March 16, 1869, "were good and collectable;" and that said "petitioners' have never notified said Ouimette that said notes were not collectable," but have proceeded to collect said notes and have collected some portion of the same, but what amount he is unable to state.

Then follows an allegation to the effect that, on the day when the notes of the petitioners became due, Ouimette tendered to each of said petitioners the sum due on his note respectively in United States gold coin, upon condition that said petitioners would deliver to said Ouimette said notes and the notes by him "deposited" with said petitioners; but that said petitioners refused to deliver said Ouimette said notes, or either of them; and that said Ouimette "is still ready to pay said sum upon the surrender of his said notes and deposits the same with the clerk of this court, to be and remain a continuing tender upon the same conditions of the surrender of his said notes set forth in the petition and said notes deposited with said petitioners." As a conclusion it is then alleged, that "by reason of the facts aforesaid, the petitioners have elected to receive the said notes deposited as aforesaid in payment of Ouimette's said notes in the petition set forth, and that said notes are paid. Wherefore he prays that said petition may be dismissed," etc.

The petitioners, by their attorneys, demur to all the allegations in the answer following the specific denials of the allegations in the complaint, because "said matter constitutes no defense to the proceedings in bankruptcy herein," with special causes of demurrer also assigned.

The allegation as to the value of the property which the defendant "owns and holds" is simply surplusage and immaterial, and ought to be stricken out. But it is no cause for demurrer. Ouimette having denied the allegation that he was insolvent at the time of the sale of the goods to Pierre & Mull, should have rested there. Besides, if it were proper to set up the value of his assets as compared with his liabilities, to show thereby that he was not insolvent, it should have been pleaded separately.

The pleas of payment by the delivery of notes of third persons, and of tender in cash after petition filed, are run together as one story or transaction. They are distinct matters, and if defenses, distinct ones, and should have been pleaded separately, that is, so that each one would stand or fall by itself, without the aid of the other. On this account, this part of the answer should have been stricken out. But this objection not having been taken, for the purpose of this demurrer, these defenses or matters will be considered, in this respect, as if they had been properly pleaded.

To maintain an action to have one adjudged a bankrupt, it must appear from the petition, that the party proceeded against, owes debts provable under the bankrupt act, to the amount of $300, and at least $250 thereof to the petitioner or petitioners, and that such party has committed an act of bankruptcy. The debt and the act of bankruptcy taken together constitute the cause of action. The defense set up, may go to either or both of these matters, and there may be several defenses to each, but they must be separately stated.

The matters pleaded in the answer as a tender of the petitioner's debts after petition filed, are immaterial, and might have been stricken out as irrelevant. They constitute no defense to the action. If, as is alleged, Ouimette is insolvent, he has no right to tender or pay to these petitioners their debts in full. It would be a fraud upon his other creditors. Nor would the petitioners have any right to receive such proffered payments, because, having alleged the insolvency of Ouimette, they would be acting in violation of the bankrupt act, and run the risk of forfeiting their debts. On the other hand, if Ouimette did not commit an act of bankruptcy, of which insolvency is a material ingredient, it matters not, so far as this proceeding is concerned, whether he owes the petitioners or not, or whether he tendered them the amount due then or not. This is not an action to collect a debt, but to procure an adjudication of bankruptcy against Ouimette, and therefore a plea of tender of the amount due the petitioners, can, under no circumstances, be a defense to it. The allegation of the petition, is that the party is not only indebted to the petitioners, but that he committed an act of bankruptcy with intent to evade the law and to defraud them. To this, it is no sufficient answer to allege—true, but I now tender you the amount of your debts.

In the course of the argument, counsel for Ouimette suggested, that in the absence of any allegation to the contrary, the court might presume that the petitioners were his only creditors, and therefore, the tender might be lawfully made and received. But I do not think such a presumption would be according to the ordinary course in such matters, and therefore, it ought not to be made. If, in fact, there are no other creditors, and for that reason, a plea of tender would be a good defense to the action, the plea should have contained an allegation to that effect. The only ground upon which such a plea should be considered to constitute a defense would be, that payment by the alleged bankrupt, under such circumstances, could neither prejudice nor injure any one, and, therefore, no one could complain of it. But even then, I do not think such a plea ought to be held to be a good defense. The fact that there are no other creditors to be prejudiced by, and complain of the payment, cannot be presumed to be within the knowledge of the petitioners. Before they accept the tender, must inquire concerning it, and they may be mistaken. Besides, no understanding of the petitioners, or proceeding between them and the alleged bankrupt upon such question, could prevent third persons, who might be creditors, from asserting their rights as such.

Treating this portion of the answer as frivolous and immaterial, there remains to be considered the allegation, which in effect amounts to a plea of part payment in the promissory notes of third persons. It will be observed that the plea does not state whether or not these notes are negotiable, or whether or not they are endorsed by Ouimette to the petitioners. For the purposes of the demurrer, I will assume that the notes are negotiable, and that they were so transferred to the petitioners, as to authorize them to sue and collect them as owners.

There is no question but what, with the consent of the creditor, payment of a pre-existing debt, can be made in the promissory note of the debtor, or that of a third person. But there is some disagreement in the decisions as to what is sufficient evidence of such consent.

In Massachusetts it is held that the delivery and acceptance of the note is sufficient evidence that it was received in payment, and it will be so determined, unless it is clearly shown, that such was not the intention of the parties. Thacher v. Dinsmore, 5 Mass. 302; Maneely v. M'Gee, 6 Mass. 145; Ilsley v. Jewett, 2 Metc. [Mass.] 173.

In New York and other states and in the national courts, it is held that the mere delivery and receipt of the note do not constitute payment, but it must also appear that the creditor expressly agreed to take it as payment. Without such agreement being shown, the delivery of the note is only a conditional payment—a payment provided that the note is paid when it becomes due. It is, however, to be deemed an absolute payment if the creditor parts with or is guilty of negligence in presenting it for payment or the like; but it seems he is not bound to sue upon it. Tobey v. Barber, 5 Johns. 72; Johnson v. Weed, 9 Johns. 311; Booth v. Smith, 3 Wend. 63; New York State Bank v. Fletcher, 5 Wend. 87; Olcott v. Rathbone, Id. 492; Jones v. Savage, 6 Wend. 662; Lyman v. Bank of U. S., 12 How. [53 U. S.] 243; Downey v. Hicks, 14 How. [55 U. S.] 249. The latter rule is the one which must prevail in this court.

The delivery of the notes to the petitioners under the circumstances stated in the plea amounted to a conditional payment. If the notes were paid or collected according to their tenor, the debt of the petitioners would be paid and extinguished. If they were not so paid or collected, and the petitioners were not guilty of negligence in the premises, the delivery would amount to nothing.

The conditions upon which the notes were taken by the petitioners as stated in the plea, differ, I think, in one particular from those which the law would attach to the transaction in the absence of any special agreement between the parties.

The petitioners having agreed to take the notes as payment if they were collectable, thereby bound themselves to sue upon them if necessary to their collection. An agreement to take notes as payment if they are or prove collectable, implies something more than to so take them if they are paid. It is equivalent to an agreement to collect them, so far as the same can be done by the use of ordinary means and diligence.

I know it was said in the argument, that the petitioners only agreed to take these notes as payment if, upon inquiry, they found them collectable—that is, would admit or consent that they could be collected; and that until it appears that such consent was given, the delivery of the notes has no effect upon the rights of the parties whatever. Such may be the mere literal sense of the contract or condition as stated in the plea, but I do not think that it ought to be so interpreted or that the parties so understood it. If the notes were not to be considered payment unless the petitioners assented to the conclusion that they were collectable, they might, if they chose, refuse that assent when it was plain that the payers were solvent and abundantly able to pay them. If the notes were in fact collectable whatever the petitioners might say or do in the premises, from the date of their delivery they were so far payment of their debts.

Now it is averred in the plea that over $2.00 of these notes are collectable, and that the petitioners have collected part of them. If so, they are so far a payment of the petitioners' debts, and the balance being less than $100 would not be sufficient in amount to enable the petitioners to maintain this

action. This, it seems to me, is a good defense to the action, or matter in abatement of it.

It may be said that, although the notes are collectable, that the petitioners, having now knowledge of the insolvency of Ouimette, cannot collect them and apply the contents on their notes, without thereby taking a preference contrary to the act and running the risk of forfeiting their debts to the other creditors. But I do not think this argument sound. If the money due on the notes is received by the petitioners at any time, as between them and third persons, in contemplation of law it is received at the time of the delivery of the notes—the conditional payment. In other words, the actual receipt of the contents of the notes by the petitioners relates back to the conditional payment, and converts it into an absolute one. The question of preference then, in the receipt and collection of these notes by the petitioners, would have to be determined by the facts as they existed when the conditional payment was made. If as between the petitioners and third persons the former were justifiable in receiving these notes when they did in payment of their debts, then they became the owners of them, and their right to collect and receive the money on them at any subsequent time, cannot be affected by the fact that Ouimette has since become insolvent or that they have since learned or have good reason to believe that he was then insolvent.

The facts stated in the plea show a part payment of the petitioners' debts; and the sum remaining due—being less than $250—does not enable the petitioners to maintain this action. The plea is, therefore, a good defense to it and the demurrer must be overruled.

If this conditional payment has in fact turned out to be no payment, by reason of the notes proving worthless or uncollectable, notwithstanding the due diligence of the petitioners, they should reply to the plea, and on the trial of the issue produce the notes and surrender them to Ouimette.

It is not necessary to more than notice the allegation of the plea that the petitioners by refusing the alleged tender, then elected to take the notes as payment. At that time the petitioners were no more at liberty to receive the notes in payment than the cash. On the argument, counsel for Ouimette made the point, that the petitioners could not maintain this action, because it was brought before their debts were due. But this objection, if made at all, should have been made by demurrer to the petition. However, I am satisfied that the objection is not tenable, as a reference to the statute will show. By section 39 of the bankrupt act [14 Stat. 536] it is provided that "any person" * * * may "be adjudged a bankrupt, on the petition of one or more of his creditors, the aggregate of whose debts provable under this

act amount to at least $250." Section 19 provides: "that all debts due and payable from the bankrupt at the time of the adjudication of bankruptcy, and all debts then existing but not payable until a future day * * * may be proved against the estate of the bankrupt."

These provisions seem to settle the question. The debts of the petitioners, although not then due, existed at and before "the adjudication of bankruptcy," and were therefore provable debts. Being provable debts they were sufficient to maintain the petition. An order will be entered overruling the demurrer, with leave to the petitioners to reply upon the payment of $5 costs.

---

OULD (HELLRIGLE v.). See Case No. 6,-344.

OULTON (GERMAN SAVINGS & LOAN SOC. v.). See Case No. 5,362.

OUTERBRIDGE (UNITED STATES v.). See Case No. 15,978.

OVERHOLT (NORTHWESTERN MUT. LIFE INS. CO. v.). See Case No. 10,338.