ABRAHAM F. RISSER ET AL. v. HENRY E. HOYT ET AL.

*Act 193 of 1883—Assignment law.*

Act 193 of 1883, the purpose of which was to prevent preferences among creditors and to distribute the debtor's property equally, is void. It is inoperative in omitting to provide for notice to parties concerned; for any record of the proceedings and review thereof; and for any means of giving effect to its provisions. It is unconstitutional as violating (1) the limitations on judicial power, since it gives a judge at chambers power which only a court should exercise, in the final disposition of the debtor's property; (2) the provision which secures the right of trial by jury, since it looks to a summary disposition of cases which necessarily turn on questions of fact; (3) the prohibition against taking property without "due process of law;" (4) the prohibition against imprisonment for debt, in that it allows a circuit judge to issue the writ of ne exeat at discretion; (5) the prohibition against impairing the obligation of contracts, since it deprives creditors of their remedies. It also attempts to exercise the questionable right of legislating upon the claims of foreign creditors, and to place them on a better footing than domestic ones; and it is as capable of being used to defraud as to protect creditors.

Certiorari to the circuit court for Kalamazoo county. (Mills, J.)   February 8.—March 14.

Proceedings under the Assignment Law of 1883. Certain creditors (Charles S. Dayton and Horace M. Peck) are plaintiffs in certiorari. Proceedings quashed.

*Dallas Boudeman* for plaintiffs in certiorari. An insolvent law which discharges the debtor from liability for any debt contracted on his surrender of his property in the manner it provides, is void, as it impairs the obligations of contracts: *Sturges v. Crowninshield* 4 Wheat. 123; *Farmers' Bank v. Smith* 6 Wheat. 131; *Ogden v. Saunders* 12 Wheat. 213; *Wendell v. Lebon* 30 Minn. 234.

*Breese & Stearns* and *Howard & Roos* for petitioners, argued that the object of the Assignment Law of 1883 was remedial and it should be liberally construed: *In re Barnard et al. Petitioners* 30 Minn. 512; *Leonard v. Strong* 11

Gray 186; *Denny v. Dana* 2 Cush. 160; similar laws are sustained in *O'Neill v. Glover* 5 Gray 160-1; *Bigelow v. Pritchard* 21 Pick. 169; *Clarke v. Ray* 6 Cal. 600; *Grant v. Lyman* 4 Met. 470; *Weston v. Loyhed* 30 Minn. 221; *Wendell v. Lebon* 30 Minn. 234.

CHAMPLIN, J.    This is a proceeding under Act No. 193 of the Public Acts of 1883, in which a receiver was appointed of the property and effects of Lafayette Mumford. The facts, briefly stated, are as follows: Lafayette Mumford was engaged in business in the village of Kalamazoo, and had been for some time prior to the 21st day of August, 1882. On said date he executed a chattel mortgage upon his entire stock in trade to Charles S. Dayton, cashier of the Kalamazoo City Bank, to secure the sum of two thousand five hundred dollars, which mortgage was not placed on file until the 5th day of October, 1883. On the 6th day of October, 1883, Mumford conveyed to his wife, Anna Mumford, a stock of goods at Battle Creek, (where he was also doing business,) and certain other property, all of the value of several thousand dollars, in payment of an alleged indebtedness to her. On the 8th day of October, 1883, Mr. Mumford gave another chattel mortgage to Charles S. Dayton to secure the sum of two thousand three hundred and seventy-two dollars and sixty-six cents, which was on the same day filed with the town clerk, and covers his entire stock in trade at Kalamazoo and elsewhere, and was given to secure the same indebtedness that the first chattel mortgage secured. On the 16th day of October, 1883, Mumford made a general assignment for the benefit of creditors to Henry E. Hoyt, subject to the chattel mortgages made to Dayton, and not including the Battle Creek stock.

It is claimed that Mumford, when he made the transfer to his wife, and when he made the second mortgage to Dayton, was insolvent, and was largely indebted to various persons, and among them, to the petitioners in this case. Messrs. Risser & Reitz, of Chicago, Illinois, and Peter Hayden, of Detroit, Michigan, being creditors of Mumford, filed their petition before Hon. Alfred J. Mills, judge of the circuit

court of Kalamazoo county, setting forth the mortgages to Dayton which they claimed to be preferences prohibited by the act, and the sale to Mrs. Mumford which they alleged to be fraudulent; and also the assignment to Hoyt, which they also claimed to be void. This petition was presented to the circuit judge at chambers, upon which he granted a restraining order, and fixed a day of hearing upon the petition, and a citation to Lafayette Mumford, Ann Mumford, Charles S. Dayton, Horace M. Peck, Henry E. Hoyt, and the Kalamazoo Wagon Company, to appear before him and show cause why the prayer of the petition should not be granted and a receiver appointed as therein prayed for. A hearing was had, testimony taken, and the judge declared the mortgages and sale were executed to prefer the bank and Mrs. Mumford over the other creditors of Mumford, and ordered a receiver to be appointed, with all the powers of a receiver under Act No. 193, and that such receiver proceed according to the provisions of said act. The secured creditors contested these proceedings, and after the order was made appointing a receiver, sued out a writ of certiorari, and the record has been removed into this Court.

The petitioners assign several errors to the proceedings, the more important of which we shall proceed to consider.

It is claimed that Act No. 193 of the Laws of 1883, upon which the proceedings are based, is unconstitutional; and our attention is called to four provisions of the Constitution with which this Act conflicts:

1st. Sec. 20, art. IV., which provides, "No law shall embrace more than one object, which shall be expressed in its title."

2d. Sec. 27, art. VI. which provides, "The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases, unless demanded by one of the parties in such manner as shall be prescribed by law."

3d. Sec. 32, art. VI., which provides, "No person shall be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

4th. Sec. 1, art. VI., relative to judicial power.

The title of the Act under consideration reads as follows : " An act to prevent debtors from giving preference to creditors, and to secure the equal distribution of the property of debtors among their creditors, and for the release of debts against debtors."

It will be necessary, for a proper understanding of the objections made, to recite at considerable length the provisions of the Act.

Section one enacts "that whenever the property of any debtor is attached or levied upon by any officer, by virtue of any writ or process issued out of a court of record of this State, in favor of any creditor or garnishment made against any debtor, such debtor may, within ten days after the levying of such attachment, process, or garnishment shall have been made, make an assignment of all his property and estate not exempt by law, for the equal benefit of all his creditors in proportion to their respective valid claims, who shall file releases of their debts and claims against such *creditors* as hereinafter provided,   *   *   *   and upon the making of such assignment, all attachments, levy, or garnishment so made shall be dissolved upon the appointment and qualification of an assignee or receiver, and thereupon the officers shall deliver the property attached or levied upon to such assignee or receiver."

By section two it is enacted that when any debtor being insolvent, shall confess any judgment or do any act or make any conveyance whereby any one of his creditors shall obtain a preference over any other of his creditors, or shall omit to do any act which he might lawfully do to prevent any one of his creditors from obtaining a preference over his other creditors, contrary to the intent of this act, or if he shall not within ten days after any levy by attachment, execution or garnishment made against him, make an assignment of all his property as provided in section one of the act, or within such time, in good faith institute proceedings to vacate the attachment and execution or garnishment, or secure a release of such levy, and defend against the said garnishment at the first

opportunity, then or within sixty days thereafter, any two
or more of his creditors holding and owning debts or claims
of not less than two hundred dollars in the aggregate amount
may make a petition to the circuit court, or a judge thereof,
setting forth therein such matters and facts as may be perti-
nent, which petition may be heard in any county in the discre-
tion of the judge ; and after notice given in pursuance of the
order of the court and in such manner as the court may direct,
to the debtor and creditors sought to be preferred, of the time
and place of hearing, the court in the term time, or judge in
vacation, shall proceed summarily upon such petition to hear
the parties, and receive such evidence as may be proper ; and
if it shall appear to the court or judge that the debtor is
insolvent, or has been giving or is about to give a preference
to any of his creditors over other of his creditors, or any of
them, or has refused or neglected to make an assignment of
his property as herein provided, the court or judge shall.
appoint a receiver, who shall take possession of all the debtor's
property, evidences of property or indebtedness, books, papers,
debts, choses in action, and estates of every kind of the
debtor, including property attached or levied upon or gar-
nished, in the manner and subject to the limitations herein
provided, and of all property conveyed in violation of the pro-
visions of this act, and have charge and control of the same,
and all debts or property garnished, except property exempt
by law, and shall convert the same into money, and shall
marshal and distribute the same among the several creditors
in proportion to their several claims, who shall file releases
of all claims against the insolvent debtor, in consideration
of the benefit of the provisions of this act as hereinafter pro-
vided, whether their claims are due or to become due, and
who shall come in and prove their respective claims within
such time and in such manner as the court or judge shall
direct, and the court or judge shall order the debtor to file a
schedule of his debts, and to whom they are due and payable,
and of his property, including all notes, accounts and bills
payable to him, and the proof ; and the payments of dividends
in all proceedings shall be had under the provisions of the

laws of this state relating to receivers, and the court or judge may order and direct such debtor to do whatsoever is necessary and proper to carry this act into effect.

Section 3 provides that "no assignment hereafter made, for the benefit of such creditors, shall give to any one creditor a preference over the claims of another creditor, except in cases expressly provided by law. If any insolvent debtor shall confess, or suffer judgment to be procured in any court, with intent that any one of his creditors shall obtain a preference over any other of his creditors, such insolvent debtor shall be deemed guilty of a misdemeanor, and punished by a fine not exceeding five hundred dollars, and in default of payment, shall be imprisoned in the county jail for a period not exceeding six months. The court may, at any time, upon the filing of affidavits, or other evidence satisfactory to the court, grant an order restraining such debtor from collecting any bills, notes, accounts, or other property, or from disposing of, or in any manner interfering with the property of said estate, or may, by writ of ne exeat, or by order, restrain said debtor from leaving the State, until the further order of the court, or may require him, at any time, to appear and make full disclosures as to any disposition of property, or in relation to any other matter pertaining to said estate."

Section 4 enacts that "conveyances and payments made, and securities given by any insolvent debtor, or a debtor in contemplation of insolvency, within four months of making an assignment, as provided in section one of this act, with a view of giving a preference to any creditor, upon a pre-existing debt, or to any persons under liability for such debtor over another, shall be void as to all creditors or persons receiving the same, who shall have reasonable cause to believe that such debtor was insolvent, and all such conveyances made, and securities given, at any time, unaccompanied with a delivery, or change of possession of the property to the grantee, unless the instrument containing the grant, or conveyance shall have been duly filed, or docketed, before the commencement of *such sixty days*, shall be void, as a preference, as to any creditor; and *they* may, by action, or other proper

proceedings, have all such conveyances, payments, and prefer-ences annulled and adjudged void, and recover the property so conveyed, or the value thereof, and recover the payment so made, and convert all the proceeds into money, as provided in this act: *Provided*, that the provisions of this act shall not apply to any payment or satisfaction, in whole or in part, of a past-due debt made in the usual course of business, without any intent on the part of the *creditor* to evade the provisions of this act."

Section 5 provides where proceedings shall be commenced, and for adding new parties as petitioners.

Section 6 provides that, where attachments or levies are dissolved by proceedings under the act, the attorney for peti-tioning creditors shall be allowed a reasonable attorney's fee, not to exceed twenty-five dollars, which shall be preferred and first paid by the receiver.

Section 7 provides that all actions and proceedings may be commenced and prosecuted in the name of the assignee or receiver, and that the laws of this State, of a general nature, applicable to receivers and assignments, not conflicting with the act, shall apply to assignees and receivers appointed there-under.

Section 8 allows an appeal to a creditor, whose claim has been disallowed in whole or in part by the assignee, to the circuit court, and to have such claim tried there as other civil actions.

Section 9 provides for the filling of vacancies in case of death or removal of assignee or receiver.

Section 10 deprives any creditor of the benefit of sharing in the distribution of the debtor's assets, who does not file with the clerk of the circuit court a release of the debtor of all claims other than such as may be paid under the pro-visions of the act, and authorizes the court *or judge* to direct that judgment be entered discharging such debtor from all claims or debts held by creditors who shall have filed releases. If, however, before the time for the distribution of the insol-vent's assets among his creditors, any creditor can make it appear that the debtor has fraudulently concealed or incum-

bered or disposed of any of his property, or fraudulently incurred any apparent indebtedness, or confessed any judgment, with the intent to cheat or defraud his creditors, or that he has fraudulently, or in contemplation of insolvency, incurred any of his indebtedness, the judge, in his discretion, may order that all the debtor's assets may be distributed among the creditors upon their filing releases, or that they be distributed among his creditors without their filing releases. The hearing is to be had before the judge summarily, without the allegations of the complaint being denied or controverted, and he may hear such legal evidence as he deems pertinent, and then is to decide according to his discretion.

Section 11 relates to the notice to be given by the assignee or receiver of his appointment, and it provides that all creditors claiming to obtain the benefits of the act shall file with such assignee or receiver their claims within twenty days after the publication of the notice.

Section 12 provides that after payment of costs, debts due the United States, the State of Michigan, all taxes or assessments levied and unpaid, expenses of the assignment and executing the trust, the assignee or receiver shall pay in full, if sufficient then remains for that purpose, the claims duly proven of all servants, clerks and laborers for personal services or wages owing from said debtor, for services performed for the three months preceding said assignment, not exceeding fifty dollars in each case, and the balance of the estate shall then be equally distributed among the general creditors thereof under the direction of the court.

The rules for construing a statute of this kind are familiar. It is in derogation of the common rights of creditors. It authorizes summary proceedings, by which extraordinary powers are given to courts and officers, the effect of which is to divest or affect rights of property, and according to the well settled and wholesome rule it must be strictly construed, and the authority conferred closely pursued.

By article VI of our Constitution the judicial power is vested in one Supreme Court, in circuit courts, in probate

courts, and in justices of the peace. The Legislature is also authorized to establish municipal courts in cities, and courts of conciliation. The courts referred to in this article are permanent organizations for the administration of justice; and it has been held that the term does not apply to those special tribunals which the law occasionally calls into existence for particular exigencies, and which cease to exist when the occasion ceases. In such cases judicial power to a limited extent is lodged in the hands of different officers for specified purposes, to be called into action as occasion may require. The exercise of this power by such tribunals is exceptional, and has been recognized and held valid only because they were under statutes in force before the Constitution was adopted, and which it was believed were not intended to be abrogated by it; or because the proceedings were preliminary and collateral to the principal proceedings, and where the officer does not render a final adjudication on the rights of the parties. *Rowe v. Rowe* 28 Mich. 356; *Shurbun v. Hooper* 40 Mich. 503; *Daniels v. People* 6 Mich. 381; *Edgarton v. Hinchman* 7 Mich. 352; *Streeter v. Paton* 7 Mich. 341. But the exercise of judicial power in its strict legal sense can be conferred only upon courts named in the Constitution. The judicial power referred to is the authority to hear and decide controversies, and to make binding orders and judgments respecting them. *Daniels v. People* 6 Mich. 381; *Underwood v. McDuffee* 15 Mich. 361.

Section 2 of this act confers upon the judge in vacation the authority to hear and determine summarily upon the questions of the insolvency of the debtor; the giving or attempting to give preferences; his refusal or neglect to make assignment of his property; and his orders and judgment (if he makes any) are final and conclusive. If he determines the question adversely to the debtor, he is required to appoint a receiver, who is commanded to take possession of the debtor's property and estate of every kind, including all property attached, levied upon, or garnished, and all property conveyed in violation of the provisions of the act, except such as is exempt, convert it into money, and ·

distribute it among such creditors as shall release their claims against the debtor. A more thorough confiscation of a man's property cannot well be imagined. The judge is not required to keep à minute of his proceedings, much less a record. The petition is to be made to the court or judge, and if made to the judge is not required to be filed anywhere. The judicial power conferred by the act is absolute, and its effect is to deprive the debtor of his property, and the creditor of his security.

Section 10 authorizes the circuit judge to hear summarily the complaint of any creditor in opposition to the debtor's release. He *may* allow the debtor to appear before him, and he may proceed without the allegations being controverted or denied, and he may hear such legal evidence as he may deem pertinent, and then he *may, in his discretion*, order that all the debtor's property not exempt by law be distributed among his creditors without their filing releases. It may be noted that the law, after leaving it discretionary with the judge, directs that if the circuit judge shall find the allegations of the complaining creditor to be true, he *shall* order and direct that all of the debtor's property and assets not exempt by law shall be distributed among his creditors without their releases being filed. Here again the judge ( and it will be noticed that the court is not mentioned in the *proviso* of this section ) hears and decides, and makes final order adjudicating upon acts of parties which affect property rights and interests, and upon matter which, by section 3, is denominated a misdemeanor, and punishable by fine or imprisonment.

A statute which confers such judicial powers upon a circuit judge at chambers is clearly in conflict with article VI. sec. 1, of the Constitution. What has been said refers particularly to that feature of the law conferring judicial power upon the circuit judge; and the question arises whether, if no other objections exist against the constitutionality of the law, it can be sustained and rendered effective where the proceedings are begun and carried on in the circuit court. Sections two and ten are necessary parts of the system, and de-

pend upon each other. Rights of creditors could not be protected without the provisions contained in the proviso: It is essential to prevent preferences, and has a direct bearing on the question of the release of the debtor ; and we do not think the intent and object of the act could be carried out with the unconstitutional provisions stricken out.

Another important question is whether the act takes away the right of trial by jury. The only provision made for a jury is in section 8, when a claim is disallowed by the assignee in whole or in part. But there are other questions which arise, anterior to this allowance or disallowance of claims, which are of far more importance, both to the debtor and to creditors, and upon the determination of which important rights are involved, and arise at the threshold of the proceedings. They are jurisdictional in their character, and are —*first*, Are the petitioners creditors of the debtor? and, *second*, Has the debtor given, or is he about to give, a preference to any of his creditors over others ; or has he refused or neglected to make an assignment of his property, as provided in the act? These inquiries involve valuable property rights under the act, and affect the citizen in the possession, control and disposition of his property. They involve questions of fact which are proper to be submitted to a jury.

It is claimed that a jury trial may be secured by the debtor or creditor or sheriff or other officer having property attached or in execution in his possession, by defying the authority of the receiver and refusing to deliver it up, and putting the receiver to his action to recover the property or its value. If the law is valid it is the duty of the debtor, creditor and sheriff to deliver up the property on demand, and it authorizes the receiver to seize it and take it into his custody. Resistance to his authority would tend to provoke a breach of the peace, and unseemly tumults would be the probable result ; and parties resisting would be brought into contempt, besides incurring the penalties prescribed by law for such acts. How. Stat. § 9257. Of what avail is this provision of the Constitution if a statute may take away or not provide

for a trial by jury, and the party be forced to secure it by the circuitous route suggested. The question of the right of the debtor to be released·from the payment of his debts is one which the contesting party has the right to have tried by a jury. The creditor is called upon to release a portion of his claim against his debtor. The consideration therefor, as expressed in the act, is the benefit he receives from its provisions. These provisions require that the debtor shall not have given any preference contrary to them; that he shall not have fraudulently concealed or incumbered or disposed of any of his property, or fraudulently incurred any apparent indebtedness, or confessed any judgment with intent to cheat or defraud his creditors, etc. Under the insolvent laws of this State, which existed prior to the adoption of the present Constitution, and which authorized the discharge of the insolvent debtor by consent of two-thirds of his creditors, upon his surrendering his property, any creditor might oppose his discharge for reasons similar to those contained in this act, and a provision was made for trial of these issues by a jury. These questions of fraud, which are involved both in the initial and final proceedings, are proper to be submitted to a jury; and where fraud constitutes the main questions of contention, and is disconnected from those of an equitable nature, the common-law courts are the proper forums in which they should be tried.

In speaking of the right of trial by jury under a similar provision of the constitution of the state of Vermont, the supreme court of that state says: "The general rule of construction in reference to this provision of the constitution is, that any act which destroys or materially impairs the right of trial by jury according to the course of the common law, in cases proper for the cognizance of a jury, is unconstitutional. * * * All the rights, whether then or thereafter arising, which would properly fall into those classes of rights to which by the course of the common law the trial by jury was secured, were intended to be embraced within this article. Hence it is not *the time* when the violated right first had its existence, nor whether the statute which gives rise to it was

adopted before or after the constitution, that we are to regard as the criterion of the extent of this provision of the constitution; but it is the nature of the controversy between the parties, and its fitness to be tried by a jury according to the rules of the common law that must decide the question." *Plimpton v. Town of Somerset* 33 Vt. 288.

In *Rhines v. Clark* 51 Penn. St. 96, it was held that an act providing for ascertaining damages done by a mill-dam was unconstitutional, because the arbitrators therein provided for were not obliged to act, and because it did not secure a trial by jury.

A statute of Pennsylvania authorized the court of common pleas, upon petition, in cases where ground rents have been or may be extinguished by payment or presumption of law but no deed of extinguishment or release thereof had been executed, to make decree declaring the ground rent released and extinguished. The court was required to make order for giving notice, etc., and on due proof being made of the truth of the petition, to make the decree. Mr. Justice Sharswood, speaking of this law and the proceedings authorized by it, said that unless the proceeding could be upheld as being within the jurisdiction of a court of equity, it must be declared unconstitutional, and he considered it well settled (citing *North Penn. Coal Co. v. Snowden* 42 Penn. St. 488; *Norris' Appeal* 64 Penn. St. 275; *Tillmes v. Marsh* 67 Penn. St. 507) that "an act of assembly cannot vest in a tribunal like a court of chancery, acting without a jury, the power to determine upon the legal rights of parties, unless there exists some equitable ground of relief. * * * The learned judge who delivered the opinion of the court below, appears to have thought that because 'there is nothing in the law which would prevent the court from sending every such case as this by a general rule to a jury,' it may therefore 'very well be questioned whether this act does in fact absolutely deprive the parties of a jury trial.' But as such a general rule, or the award of an issue in any particular case, would be entirely in the discretion of the court, it is clear that the parties have not secured to them their constitutional

right of trial by jury. They would in effect hold it at the mere pleasure of the court." *Haines' Appeal* 73 Penn. St. 169.

Under the recent Bankrupt Act of the United States the right of trial by jury was secured upon these questions, and it was held that the process, pleadings and proceedings in such cases must be regarded as governed and controlled by the rules and regulations prescribed in the trials of civil actions at common law. *Insurance Co. v. Comstock* 16 Wal. 258. The debt and the act of bankruptcy taken together constitute the cause of action. The defense may controvert either of these or both. *In re Ouimette* 1 Sawy. 47. The objection that the petitioners are not creditors goes not only to their disability, but to the jurisdiction of the cause. *In re Cornwall* 9 Blatchf. 114. Under this act, although the law did. not provide for notice to the preferred or attaching creditor yet it was held that such creditor had the right to appear and oppose the adjudications and that he might contest upon the merits and take advantage of any defense available to the debtor. *In re Husted* 5 Law Rep. 510; *Clinton v. Mayo* 12 N. B. R. 39; *In re Walter S. Derby* 8 N. B. R. 106; *In re Elias G. Williams* 14 N. B. R. 132; *In re S. Mendleshon* 3 Sawy. 343. Under Act No. 193 notice is required to be given, not only to the debtor but to the preferred creditor, and it follows that such creditor may avail himself of any defense open to the debtor. This disposes of the objection made at the argument, that the creditor cannot raise the question of the right of a trial by jury.

Attention has been called to the fact that Act No. 193 is almost a literal copy of chapter 148 of the general laws of the State of Minnesota passed in 1881, and that the supreme court of that state has pronounced the law constitutional there; and counsel urge that in adopting the law from that state the Legislature adopted the construction placed upon it by its courts. This rule of construction, sometimes recognized, is not always adopted, and never where such construction and the statute construed are in conflict with the fund-

amental law. It would be a dangerous precedent for a court invested with the responsibility of deciding upon the constitutionality of a law, to follow blindly the decision of the courts of another state upon the question, although the opinions of such courts are deserving of great consideration.

In *Weston v. Loyhed* 30 Minn. 221, the court held the act did not conflict with that provision of their constitution which declares that no person shall be deprived of his property without due process of law ; the court saying that the proceedings were "to be instituted in the district court, and, from the beginning to the end are in and under the control of that court," which "has *inherent power*, where no limitation is imposed, to so direct the procedure in all causes before it that the legal and constitutional rights of parties may be maintained. We may assume, for it is not questioned here, that no conclusive determination or adjudication in the allowance of debts by the receiver could be sustained upon constitutional grounds, whether the same was made ex parte, or upon notice and hearing ; that such a proceeding would not be ' due process of law.' But we find nothing in the section indicating that it was intended that the action of the receiver, in this regard, should conclude any party interested in the proceeding. The act does not point out the method of procedure to be pursued by a party who may be unwilling to accept the decision of the receiver, but the administration of this law and the control of the procedure being committed to the court whose jurisdiction is general at law and in equity, it remains for that court, whenever the occasion shall require and the exercise of its power shall be invoked, to devise or direct such a course of procedure that the object of the law may be accomplished in a legal and valid distribution of the insolvent estate."

It needs no argument to demonstrate how inapt this reasoning is to the framework of government under which legislative and judicial power is exercised in this State. It concedes that a proceeding in accordance with the statute would not be "due process of law," but deficiencies in the legislative act are to be supplied by the court as occasions arise, and the court is "to devise and direct such a course of procedure that the

object of the law may be accomplished." Another provision
of our Constitution stands in the way of adopting this decis-
ion as a correct exposition of the law. The judiciary are
prohibited from exercising legislative functions.

In *Wendell v. Lebon* 30 Minn. 234, the same court held
that section 2 of the act did not conflict with that provision
of their constitution which provides that no person shall be
deprived of his property without due process of law; nor
with another provision of their constitution declaring that
the right of trial by jury shall remain inviolate, and shall
extend to all cases at law without regard to the amount in
controversy. Upon the latter point the court say: "We are
not prepared to say that the issue as to whether an insolvent
debtor had fraudulently concealed, or fraudulently incum-
bered or disposed of any of his property, with the intent to
cheat and defraud his creditors, might not, under the provi-
sions of section 10 of the act of 1881, be submitted to a jury.
But, however that may be, a comparison of the old insolvent
law and the Act of 1881 will show that, although having some
resemblance to each other in some of their provisions, they are
entirely different acts, both in their scope and effect, and that
the issue to be submitted to a jury under section 8 of the old
law is not only different in itself, but for an entirely different
purpose, from that to be determined under section 10 of the
present act. The Act of 1881 is an entirely new act, creat-
ing in effect a new tribunal, where proceedings are not 'at
law,' or according to the course of the common law, but are
special in their nature, and correspond more nearly to the
proceedings in a court of equity. The constitutional pro-
vision invoked does not apply to proceedings of this kind.
*Ames v. L. T. & M. R. R. Co.* 21 Minn. 241, 293; *City of
Minneapolis v. Wilkin* 30 Minn. 140."

The reason assigned by the court that the act is a new
one, creating a new tribunal whose proceedings are not "at
law" or according to the course of the common law, but
special in their nature, corresponding more nearly to a court
of equity, does not appear to me to be sufficient to uphold
the constitutionality of the law as against the objection made.

It was against the enactment of new laws which ignored the proceedings according to the course of the common law, and provided summary methods of determining legal rights, that the protecting shield of the Constitution was required. The true criterion is, does the act destroy or materially impair the right of trial by jury according to the course of the common law, in cases proper for the cognizance of a jury? The nature of the controversy between the parties, and its fitness to be tried by a jury according to the rules of the common law, and not the nature of the tribunal, nor the summary mode of proceeding therein, should decide the question. The cases cited as the basis of the opinion of the supreme court of Minnesota would find no support in this State under our Constitution. *Underwood v. People* 32 Mich. 1; *Swart v. Kimball* 43 Mich. 443; *People v. Smith* 9 Mich. 193; *Tabor v. Cook* 15 Mich. 322; *Paul v. Detroit* 32 Mich. 109; *Woodbridge v. Detroit* 8 Mich. 297, 300; *Williams v. Detroit* 2 Mich. 560; *Campau v. Detroit* 14 Mich. 276; *People v. Brighton* 20 Mich. 57; *Chicago &c. R. R. Co. v. Sanford* 23 Mich. 418; *Mansfield &c. v. Clark* 23 Mich. 519; *G. R. &c. R. Co. v. Van Driele* 24 Mich. 409; *Horton v. Grand Haven* 24 Mich. 465; *McClary v. Hartwell* 25 Mich. 139; *Arnold v. Decatur* 29 Mich. 77; *Powers' Appeal* 29 Mich. 504; *Ryerson v. Brown* 35 Mich. 333.

Neither do I see how, under section 10 of the act of 1881, such question can be submitted to a jury when requested by either party. There is no provision for a jury. In *People v. Lawton, Judge of Probate* 30 Mich. 386, this Court held that a law was not enforceable unless it furnished adequate means to secure the purposes for which it was enacted. The fault in that case was the failure to provide for a jury to try the charge in the probate court. Other cases have arisen under the act, and have been determined by the supreme court of Minnesota, but they are only interesting in this discussion as showing to what extent that court is called upon to supply defects in the law. In *Re Barnard* 30 Minn. 512, that court held that making a petition to the wrong county court did not go to the jurisdiction over the

subject-matter, *or the debtor;* that at the time appointed for hearing, the debtor might apply to have it removed to the proper county. The court very justly adds: "It must be admitted that there are difficulties in the way of this construction, but there are difficulties in the way of any other. * * * But this is not the first occasion upon which this court has found it necessary to subject its imperfections in details of practice to rigorous construction." In *Re Pauline Graeff* 30 Minn. 358, it was held that an appeal lay to the supreme court from an order appointing a receiver, under chapter 86, sec. 8, subd. 6, which provides that the aggrieved party may appeal to the supreme court from a final order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment. In *Re Pauline Graeff* 30 Minn. 476, the court said: "The court is of opinion that the confession of judgment by an insolvent debtor in favor of one of his creditors justifies the filing of a petition by his other creditors, without reference to whether such creditor did or did not thereby in fact obtain a preference."

Perhaps in that state, where the functions of law and equity procedure are not kept distinct as here, but are all administered as civil actions, and where, by a constitutional amendment adopted in 1875, the district judges "severally have and exercise the powers of the court, under such limitations as shall be prescribed by law," the act in question may be considered constitutional, and its defects supplied by a liberal exercise of judicial power and rigorous construction. But our Constitution does not confer such power upon circuit judges, and our courts cannot supply defects in legislation.

I do not decide that there are not many questions which might be raised under this statute which it would be competent for a court to decide without the intervention of a jury, and I confine myself to those which are of common-law cognizance, as distinguished from those of an equitable nature. For instance, under section 2 of this act two facts, at least, must concur before the debtor can be deprived of his property: 1. He must owe three or more debts, two at least amounting in the aggregate to not less than $200; 2. He must

have done some act, or omitted to do some act, which this section prescribes shall entitle two or more creditors to file a petition. These acts are treated as a fraud upon the rights of other creditors, and constitute the gist of the proceedings. Such issues, involving the elements of fraud both as to the debtor and creditor alleged to have been preferred, are such as are peculiarly appropriate for a jury, and the right to have such trial cannot be taken away by a summary proceeding of this kind. *Whitley v. Gaylord* 3 Jones (N. C. L.) 286; *Purvis v. Robinson* 4 Jones (N. C. L.) 96. There is a class of cases where it is competent to enter judgment upon motion without the intervention of a jury, such as upon appeal bonds, recognizances, and the like; but in these cases the breach is known to the court as matter of record, and there can be no matter of fact in pais to be tried. In such cases no constitutional right is violated. *Hiriart v. Ballon* 9 Pet. 156; *People v. Quigg* 59 N. Y. 83; *Chappee v. Thomas* 5 Mich. 53; *Lang v. People* 14 Mich. 439.

From what has been said concerning the deprivation of the right of trial by jury, it is apparent that the act deprives parties of their property without due process of law. It does not provide that there shall be an adjudication upon the allegations of the petition; but simply enacts that if it shall appear to the court or judge that the debtor is insolvent, or has been giving or is about to give a preference, &c., he shall appoint a receiver. This he is authorized to do without a determination as to the fact duly pronounced by the court. The debtor is treated as an adjudicated bankrupt without adjudication. If we take Mr. Webster's definition, which is terse, and as accurate as any, viz.: "By the 'law of the land' is most clearly intended the general law, which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, and property under the protection of general rules which govern society. Everything which may pass under the form of enactment is not the law of the land,"—and apply it to this act, we find that

provision is made for inquiry and execution, but none for judgment. The method of inquiry is not according to the course of the common law. In no proper sense is a trial had at all. The proceeding is to be summary; the parties are to be heard, and such evidence received as may be proper. The court or judge does not ascertain judicially that the debtor has forfeited his privileges, or that his creditors have a superior title to his property, and therefore it shall be taken from him. With certain limitations and exceptions, not necessary to be noticed here, because the proceedings authorized by this statute do not fall within them, "the words, due process of law,' cannot mean less than a prosecution or suit according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property." This language must be taken with the important limitation that the forms and solemnities required must be such as were essentially in existence at the time of forming the constitution as a part of the ordinary means of administering justice. Per Bronson, J., in *Taylor v. Porter* 4 Hill 140.

It is claimed for this hearing that it is merely preliminary, and that no rights are determined or divested by it; and as supporting this position we are cited to the case of *O'Neil v. Glover* 5 Gray 144, where it was held that an adjudication under the insolvent law of Massachusetts did not conflict with this constitutional provision because it was merely preliminary in its nature, and did not finally determine the question of indebtedness, or deprive the debtor of his property or estate. This cannot be said of the act in question. Under it, can the hearing upon the petition be regarded as merely preliminary? What right has any one to wrest the property of the alleged debtor from him and convert it into money, and distribute it to other parties, without a final adjudication upon the issues submitted? If these inquiries are merely preliminary, when, in the later stage of the proceedings, are the issues tried and the questions determined whether or not the debtor has, by active means or passive inaction, committed a fraud upon his creditors which entitles an officer of the court to take possession and control of all his property,

except what is exempt, and administer his estate against his will? To the debtor and to the preferred creditor it is the principal question in the whole controversy, and the decision of it virtually ends the contest. The determination has the effect of a judgment at law upon which an execution issues, and lays hold of all the debtor's property. It is even more extensive; it has the effect of a decree in chancery upon a judgment creditor's bill, which draws into the hands of the court all the estate, legal and equitable, of the debtor. A determination which lies at the foundation of such important consequences is not merely preliminary.

I am of opinion, for reasons above given, that the law in question is unconstitutional.

SHERWOOD, J., concurred.

COOLEY, C. J. I am not prepared to assent altogether to the views on the constitutional aspects of this case which are presented in the opinion of my brother Champlin, and as the result of the case does not depend upon them, I shall present my own views separately.

I have no doubt that if the Act could be enforced at all, some of the contested questions which might arise in any case would necessarily, at the option of the parties, be tried by jury, and it would be necessary to give the statute such a construction as would admit of such a trial. But the framers of the Act probably contemplated such a trial of some of such questions, though they have not expressly provided for it. The provision in the Act for a writ of ne exeat, at the discretion of the circuit judge or circuit court, is unquestionably unconstitutional. Under it a debtor who was unable or unwilling to give bail, might at the mere will of the judge be kept in jail indefinitely; and the authority thus to imprison him is plainly in conflict with the constitutional inhibition of imprisonment for debt. Const. Art. VI. § 33; *Bailey v. Cadwell* 51 Mich. 217. And much of the summary power which the Act undertakes to confer upon the circuit judge sitting at chambers, it must be quite impossible to give to any officer not at the time sitting as a court, when the Constitu-

tion in terms vests the judicial power of the State in certain specified courts. Article VI. § 1. But if the constitutional objections in regard to judicial power to act were all to which the Act was obnoxious, it is possible that in its main features it might be upheld and enforced through the circuit courts. An objection more plainly fatal is that the Act gives no sufficient means whereby it may be enforced, and . the rights of parties protected.

The Act contemplates that the proceedings under it may be taken indifferently in the circuit court, or before one of the circuit judges at chambers. The circuit courts are not insolvency courts, except as they may be made such by this Act, and they have no rules or course of procedure to which proceedings under this Act can be conformed. Unless the Act itself furnishes a sufficient rule for the guidance of courts and judges acting under it, each court and each judge must be left to devise a course for the particular case. To do this would require an amount of legislation quite beyond what courts and judges are commonly expected to attempt.

It will readily be perceived, from the summary of the statute, which has been given, that a proceeding under the Act is intended not only to be a bar to all claims, but also to determine adverse claims to property as between the receiver, representing the general creditors on the one hand and persons claiming to be purchasers and lien creditors on the other. It is therefore a proceeding which often may have the importance of several suits at law; and it is of vital necessity, therefore, that careful provision be made for a hearing in all important stages to all parties concerned.

The Act is singularly deficient in providing for such a hearing. When application is made for the appointment of a receiver, after the debtor has made an assignment, the second section of the act provides for no notice whatever, except to the debtor and such creditors as he may have sought to prefer, and the notice to be given to them is left. exclusively to the judge's discretion. But upon this application the judge is expected to proceed summarily, and he may make an order, the effect of which will be to change

very materially the rights of creditors not notified, and to force from them a release of their claims as a condition of participating in the fund. It cannot be assumed that all creditors will desire the appointment of a receiver, and that their assent may be taken for granted : it may well happen that they will greatly prefer to take their rights under the common law assignment; and they should certainly be given the opportunity to express their desires in this regard. The judge is also expected to adjudicate summarily upon supposed attempts by the debtor to give preferences, and the receiver, if one is appointed, is to take possession of the debtor's estate, "including property attached or levied upon or garnished in the manner and subject to the limitations herein provided, and of all property conveyed in violation of the provisions of this act," etc. It was admitted on the argument that it would not be competent for the legislature to confer upon any court the authority to proceed thus summarily to adjudicate contested rights, and it was said that parties claiming as purchasers or as lien-creditors could not be summarily dispossessed by the receiver, but would have a right to have a hearing, in some regular suit instituted at law or in equity, and proceeding according to the established course of the court in which it should be brought. We agree that the right to a trial must remain whether the statute intends it or not; but the failure to make express provision for it is one of the many difficulties which the act presents. As the attempt to give a preference of one creditor over another will commonly be the ground for the appointment of a receiver, a curious anomaly would appear, if, after the appointment was made, it should turn out in the subsequent suits to which the receiver should resort, that there had in fact been no such attempt. But this might well happen if the summary adjudication by the court preliminary to the appointment of a receiver is held to bind no one.

Section eleven requires the receiver to publish notice of his appointment in some newspaper of the county in which the debtor or one of the debtors resides, and also to send notices by mail to creditors whose residence is known to

him.   The creditors must then, if they would have the bene-
fit of the Act, file their claims within twenty days after the
publication.   This limitation of time when creditors are to
be brought in by publication, and when the publication is of
a kind not at all likely to be brought to the knowledge of
creditors at a distance, is wholly unreasonable.   Besides, the
section makes no provision whatever for notice when the
debtor is not a resident of the State.   Section five permits
the petitioner in such a case to select such county as he
pleases in which to institute the proceeding, and it is easy to
see that the Act might be made use of by a dishonest debtor
and his friends to appropriate his estate for the benefit of a
few, by means of proceedings begun and conducted with a
view to keep within the letter of the Act while disregarding
its spirit, and by summarily creating and settling up the trust
before the creditors in general should be aware of its exist-
ence.   The Act seems very well calculated to invite and
facilitate frauds, instead of furnishing securities against
them.

The eighth section, in providing for an appeal from the
receiver to the circuit court, reads as if it were supposed a
regular issue would be made up and submitted to the receiver
for his judicial action, and that an appeal to the court would
carry up that issue for trial.   But as the receiver has no
judicial power whatever, it is difficult to understand what
is meant by this appeal.   There must be a suit of some sort:
but who shall be sued and how ?   The legislative intent is
left wholly to conjecture.          •

Of the very important proceedings for which this Act pro-
vides, no record whatever is directed.   They are as informal
as they can well be; and the directions given are so vague
and general that anything like uniformity of action, in pro-
ceeding under the Act, could not possibly be looked for.   If
the proceeding is before the judge at chambers, he is with-
out a clerk; and it might be conducted with less formality
and with less probability of a record on which parties could
rely for the protection of their rights, than in the most insig-
nificant action before a justice of the peace.   The power of

the judge in directing issues and modes of proceeding would be limited only in his discretion, and there would be no review of his action except on the question of jurisdiction.

It is impossible to enforce such a law. The failure to make adequate provision for notice to the parties concerned is fatal to it; but if notice were provided for, it would still be too vague, uncertain and imperfect in its provisions to be an effectual law for the cases it undertakes to provide for. A great deal of legislation would be necessary to give it effect; much more than would fairly be within the compass of rules of court. But the Act does not provide for rules of court: it assumes that the twenty-eight circuit judges of the State may be called upon severally to work their way through proceedings under it, without guidance, but without confusion, and that just results will always follow. We think, on the other hand, that confusion and doubt would attend every effort to proceed under the Act, and that it would be as likely to be employed to assist fraud as to circumvent it. The law previously in existence guarded against preferences among creditors by an insolvent debtor, and this Act, instead of being in aid of the previous law, would only introduce uncertainty and difficulty.

It is said that a statute similar to this has been sustained in Minnesota. *Weston v. Loyhed* 30 Minn. 221; *Wendell v. Lebon* id. 234. But it does not necessarily follow that the same statute should be sustained here. The Minnesota system of judicial procedure is quite different from ours, and such an act may perhaps receive help in that state from other statutes and from the Code of Procedure which it could not have here. In this State such an act must fail unless it is sufficient in itself; for it does not come in as a part of any existing system, and has nothing else in the statutes to supply its deficiencies.

CAMPBELL, J. concurred.

CAMPBELL, J. While I agree with all that has been said by the Chief Justice, and think with him that the statute in

question is fatally defective in employing illegal methods, and in not providing legal methods, yet I also think with the other members of the Court that the statute is radically bad in all of its material purposes. It aims at destroying rights which are beyond legislative discretion, and it leaves important interests to be governed by no fixed rules whatever, and subject to the unregulated will of persons who cannot be lawfully empowered to make their will obligatory on others.

I think, as I intimated at the hearing, that the general purpose of this scheme of legislation is itself beyond the competency of a state legislature. There is no reason to believe that any legislature would designedly adopt a system which would put domestic creditors on a worse footing than foreign. It is manifest, however indirectly it may have been attempted, that a principal purpose of this statute is to discharge debtors from their contracts, and to cut off creditors from their rights of action. I think it at least extremely doubtful, under the peculiar Constitution of this State, which not only designates all the classes of courts which the Legislature can establish, but also marks out with some exactness the jurisdiction of each, whether it is possible to provide for such insolvent proceedings as are substantially bankrupt laws, as it certainly is not possible to evade the provisions forbidding imprisonment for debt. But there is no doubt, under the decisions of the Supreme Court of the United States, that foreign debts and debts owned by citizens of other states are beyond the reach of any state insolvent laws. Neither can debts already existing be discharged at all in the hands of any one. The suggestion that this law does not impair the obligation of contracts, because it only acts on willing creditors, is not even plausible. Creditors are authorized to be brought in whether they will or no, and being in they must lose all their advantages gained by such diligence as they have exercised in reliance on the laws of the State, and lose all dividends also, unless they choose to give up their rights as well as their securities. To call such a submission·

voluntary is an abuse of language. I prefer, therefore, to rest my objections to this law mainly, as my brethren, Champlin and Sherwood, have, upon those radical faults which make the whole theory of the statute a violation of fundamental rights. I concur substantially in their views on the main questions.